[No. B067478. Second Dist., Div. Two. Aug. 4, 1993.]

SECURITY OFFICERS SERVICE, INC., Plaintiff and Appellant, v. STATE COMPENSATION INSURANCE FUND, Defendant and Respondent.

888

**COUNSEL**

Nicholas P. Roxborough and Esteban G. Gallegos for Plaintiff and Appellant.

Sheppard, Mullin, Richter & Hampton, Pierce T. Selwood, Andre J. Cronthall, William J. Arzbaecher III, Richard A. Krimen, Charles W. Savage and Jody A. Carr for Defendant and Respondent.

**OPINION**

**FUKUTO, J.**—Does the implied covenant of good faith and fair dealing require a workers' compensation insurer to defend and resolve claims with due regard to the impact of outstanding claims and reserves on the premiums

the insured will be assessed and on policy dividends it may receive? Alleging it had been damaged by defendant State Compensation Insurance Fund's (SCIF) systematic failure to process claims diligently, and its unreasonable inflation of the reserves assigned to them, plaintiff Security Officers Service, Inc., brought this action for breach of contract and implied covenant, as well as fraud and negligence. The trial court sustained without leave to amend a demurrer to plaintiff's second amended complaint, apparently accepting SCIF's contentions that its alleged conduct did not constitute a breach of contractual duty, and that SCIF was immune from suit in tort.

The immunity contention having been soundly discredited by two recent decisions in similar cases, we confront the primary issue of liability they did not reach. We hold that under an insurance regime in which the insured's annual claims experience inexorably influences its premiums, the insurer may be liable if it processes claims and sets reserves without good faith regard for their impact on the insured's premiums and potential dividends. We therefore reverse the dismissal and direct that plaintiff be allowed to proceed with a new amended complaint.

### FACTUAL STATEMENT

We summarize the allegations of plaintiff's second amended complaint, as supplemented by matters of which judicial notice is mandatory under Evidence Code sections 451, subdivisions (a), (b), and 459, subdivision (a)(2). (These include the Workers' Compensation Insurance Rating Bureau of California [rating bureau] manual, rating plan, and statistical plan, of which SCIF has requested judicial notice.)

Defendant SCIF is a public workers' compensation insurance enterprise, governed under Insurance Code sections 11770-11881. In December 1986, plaintiff entered into three insurance contracts with SCIF (collectively the policy), affording workers' compensation insurance for the period December 1, 1986, to December 1, 1988. Under the policy, SCIF agreed to "pay promptly when due to those eligible under this policy the benefits required of [plaintiff] by the workers' compensation law." The policy also obligated SCIF to defend claims, stating in relevant part: "We have the right and duty to defend at our expense any claim, proceeding or suit against you for benefits payable by this insurance. We have the right to investigate and settle these claims, proceedings or suits."

Part five of the policy provided that premiums would be determined by the rating bureau's manuals of rules, rates, rating plans, and classifications, and that plaintiff would accept any increased premiums or rates which might be

promulgated under an Insurance Commissioner-approved rating plan. Part six provided that plaintiff would "be entitled to participate in any dividend plan applicable to this policy which may be approved for distribution by [SCIF's] Board of Directors if the final premium determined at the end of the policy period is more than the minimum premium . . . . [¶] . . . Your participation will be according to the rules adopted by our Board of Directors."

Plaintiff's policy premiums are determined by the rating bureau, as a function of the "manual rate" for the industry in question (prescribed by Cal. Code Regs., tit. 10, § 2350), the employer's annual payroll, and its loss "experience rating," as modified with regard to the number of claims outstanding at the end of the year, and the amount of reserves SCIF has established for those unresolved claims. (See Cal. Code Regs., tit. 10, § 2353 [rating bureau experience rating plan].) Not only does this "experience modification" affect plaintiff's premiums, the claims history also affects its entitlement to dividends.

Against this backdrop, plaintiff alleges the following contractual violations, in overlapping causes of action for breach of contract and "contractual breach of the implied covenant of good faith and fair dealing." First, SCIF breached its policy duty to pay benefits promptly, by unjustifiably allowing claims against plaintiff to remain open. For example, using its own hired consultant, plaintiff was able to resolve within three months several of the oldest such claims, some of which had been open for as long as three years. These claims were closed "for payments of approximately $7,500," whereas SCIF had assigned them reserves in excess of $100,000, in violation of an implied standard of reasonableness in allotting reserves. SCIF also ignored plaintiff's offer to provide investigators to expedite processing outstanding claims. In consequence of SCIF's conduct, plaintiff's experience modification rating increased, causing plaintiff's premiums to rise to unwarranted levels.

Plaintiff further alleges that by its sloth in resolving claims, SCIF breached its duty to defend and resolve them in requisitely diligent fashion, and thereby similarly adversely affected plaintiff's experience modification rating and consequent premiums. Moreover, by the described acts and omissions—not promptly paying claims when due, not diligently defending claims, and not reasonably reserving them—SCIF breached its policy obligations to plaintiff in respect of dividends. This breach also derived from a failure to "follow the rules and conditions for the declaration of a dividend." On information and belief, plaintiff would have received such dividends had SCIF complied with its duties.

Plaintiff's third cause of action, denominated "fraudulent claims practice," alleges several particular instances in which SCIF's personnel delayed resolution of claims against plaintiff, for periods in excess of three and one-half years. On information and belief, plaintiff alleges that the reserves for these claims, totalling in excess of $250,000, were deliberately inflated by SCIF with the intent to raise plaintiff's experience modification rate, after plaintiff announced it intended to terminate the policy. SCIF orally assured plaintiff these claims were being handled diligently, with appropriate reserves, and plaintiff justifiably relied on those assurances. When plaintiff subsequently discovered improprieties in claims handling, SCIF refused plaintiff's request for a claims audit.

In a final cause of action, for "negligent misrepresentation," plaintiff alleges that in December 1988 SCIF negligently understated plaintiff's payroll to the rating bureau, by reporting a nine-month payroll as being a full year's, thereby improperly increasing plaintiff's attributed percentage of claims to payroll. This miscalculation, together with SCIF's negligent evaluation of claims, and consequent imposition and reporting of inflated reserves, once more inflated plaintiff's experience modification rating and enhanced its premiums. (The "false" report also is alleged to have constituted a further breach of the implied covenant of good faith and fair dealing.) Plaintiff alleges it suffered actual damages of in excess of $250,000 on each cause of action, and prays for punitive damages on the third.

SCIF demurred to each cause of action, alleging failure to state a cause of action and that SCIF was immune from tort liability. Concurrently, SCIF moved to strike the punitive damages allegations. The court sustained the demurrer without leave to amend and ruled the motion to strike moot. Plaintiff appeals from the ensuing judgment of dismissal.

DISCUSSION

1. *The Immunity Issue.*

The parties again join issue on SCIF's two general grounds of demurrer below: affirmative failure to state a cause of action and immunity from suit in tort. The latter may be disposed of compactly, so we treat it first.

SCIF's contention that it may not be sued in tort has only limited potential significance, because, as pled, plaintiff's claims sound principally in contract. In any event, the asserted immunity does not appear. SCIF grounds its claim principally on provisions of the California Tort Claims Act (Gov. Code, § 810 et seq.), together with an antecedent decision, *Rauschan*

v. *State Comp. Ins. Fund* (1927) 80 Cal.App. 754 [253 P. 173] (*Rauschan*). We need not rehearse SCIF's arguments in detail, because they have already been satisfactorily laid to rest.

In *Courtesy Ambulance Service* v. *Superior Court* (1992) 8 Cal.App.4th 1504 [11 Cal.Rptr.2d 161], a case involving allegations against SCIF very much like those here, the court rejected SCIF's contention that it is subject to the California Tort Claims Act, upon extensive analysis of the language and history of Insurance Code section 11873, which excepts SCIF from most provisions of the Government Code. More recently, in *Maxon Industries, Inc.* v. *State Compensation Ins. Fund* (1993) 16 Cal.App.4th 1387 [20 Cal.Rptr.2d 730]—yet another case involving similar allegations—Division Four of this court also rejected SCIF's immunity contention, essentially embracing the reasoning of *Courtesy Ambulance*, and further explaining that *Rauschan, supra,* 80 Cal.App. 754, had long ago been disapproved by the Supreme Court. Upon independent consideration, we agree with the analyses and holdings of *Courtesy Ambulance* and *Maxon Industries;* which disabused essentially the same arguments SCIF advances here.[1]

### 2. *The Contract and Implied Covenant Claims.*

 The theory of plaintiff's principal, contract claims is that SCIF breached either the express terms of the policy, or its implied covenant of good faith and fair dealing, or both, by an interwoven pattern of failing to pay claims promptly, defend them diligently, or assign them reasonable reserves, followed by improperly failing to pay plaintiff dividends. SCIF's position is that the complaint on its face shows no such breach of either express or implied contractual duties, because SCIF's alleged practices are consonant with the policy's allocation of responsibility and discretion. We consider these positions with respect to SCIF's various policy obligations, to pay benefits, defend claims, and where appropriate declare and pay dividends.

The policy specifically requires SCIF to "pay promptly when due to those eligible under this policy the benefits required of [plaintiff] by the workers' compensation law." SCIF contends this language prescribes only a duty to

---

[1]In addition, SCIF cannot avail itself of *Isaacson* v. *California Ins. Guarantee Assn.* (1988) 44 Cal.3d 775 [244 Cal.Rptr. 655, 750 P.2d 297], which held that the California Insurance Guarantee Association (CIGA) was immune from tort liabilities. That holding derived from a specific statutory provision concerning CIGA. (See *id.* at pp. 783-789.) Moreover, the court noted that CIGA was not vulnerable to an insurance bad faith claim for the additional reason that there existed no insurance contract between CIGA and the plaintiff (*id.* at p. 789), a posture notably different from SCIF's here.

disburse payments that have become due (presumably by and after adjudication or settlement), and therefore plaintiff's allegations of slow and expensive claims resolution do not describe a breach of the obligation. That may or may not be true. Another facially permissible construction of the "prompt payment" obligation is that it accrues when a sufficiently definite case of workers' compensation liability is made out. Under that interpretation, plaintiff's allegations of delay in resolving claims may signify violations. At this stage the policy cannot necessarily be said to bear the more restricted meaning. (See, e.g., *Aragon-Haas* v. *Family Security Ins. Services, Inc.* (1991) 231 Cal.App.3d 232, 239 [282 Cal.Rptr. 233].)

The allegedly slow and expensive claims resolution also occurred as part of SCIF's defending, investigating, and settling claims, which the policy grants SCIF "the right" and, as to defense, the "duty" to do. Because the policy language granting and imposing these rights and duty says no more about how they are to be carried out, SCIF correctly argues that its challenged practices do not violate that language. But this does not end the inquiry. SCIF's contention that "the [p]olicy does not require [it] to handle claims 'properly' or 'expediently' or in any other manner" must also be tested against the policy's implied covenant of good faith and fair dealing.

That covenant is implied by law in all contracts, but it has received most attention in insurance policies, as to which alone a breach may be remedied in tort as well as contract. (*Foley* v. *Interactive Data Corp.* (1988) 47 Cal.3d 654, 683-685 [254 Cal.Rptr. 211, 765 P.2d 373].) The duty imposed "is not the requirement mandated by the terms of the policy itself—to defend, settle, or pay. It is the obligation, deemed to be imposed by the law, under which the insurer must act fairly and in good faith in discharging its contractual responsibilities." (*Gruenberg* v. *Aetna Ins. Co.* (1973) 9 Cal.3d 566, 573-574 [108 Cal.Rptr. 480, 510 P.2d 1032].) "The precise nature and extent of the duty imposed by such an implied promise will depend on the contractual purposes." (*Egan* v. *Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809, 818 [169 Cal.Rptr. 691, 620 P.2d 141] [*Egan*].) Generally, however, "[t]he covenant of good faith finds particular application in situations where one party is invested with a discretionary power affecting the rights of another." (*Carma Developers (Cal.), Inc.* v. *Marathon Development California, Inc.* (1992) 2 Cal.4th 342, 372 [6 Cal.Rptr.2d 467, 826 P.2d 710] [*Carma Developers*].) Thus "the insurer, when determining whether to settle a claim, must give at least as much consideration to the welfare of its insured as it gives to its own interests." (*Egan, supra,* 24 Cal.3d at p. 818.) And in some circumstances, this means an obligation to investigate claims properly and discharge them without delay. (See *id.* at p.

819 [disability policy]; *McCormick* v. *Sentinel Life Ins. Co.* (1984) 153 Cal.App.3d 1030, 1046-1050 [200 Cal.Rptr. 732] [same].)

■ The foregoing authorities (and others) clearly instruct that the implied covenant of good faith and fair dealing imposes limits on the insurer's latitude in discharging its contractual right or duty to defend, investigate and settle claims. In traditional cases, involving whether or not settlement should have been preferred and pursued over trial, insurers have been held to a "standard . . . premised on the insurer's obligation to protect the insured's interests in defending the latter against claims by an injured third party." (*Egan, supra,* 24 Cal.3d at p. 818.) ■ The question presented here is whether such standards, imposed by the implied covenant, govern not only the insurer's freedom to accept or reject settlement offers, but also its discretion in leaving claims unresolved and outstanding, and in fixing monetary reserves to account for their future resolution.

SCIF argues that so long as it defends and pays claims against plaintiff, plaintiff has received the benefits of SCIF's obligations in respect of defense and payment, and it is not plaintiff's contractual concern that SCIF may elect to prolong claims unreasonably and marshal reserves excessively, even if doing so predictably and inevitably enhances plaintiff's premiums and perhaps deprives it of dividends. We conclude that this contention and its premises are deficient.

SCIF primarily contends that plaintiff's assertions of duty conflict with the basic proposition that the express terms of the contract, and its purposes, delineate and limit the requirements of the covenant of good faith, which cannot be construed to forbid something the contract requires, or vice versa. (*Carma Developers, supra,* 2 Cal.4th at p. 373; *Tollefson* v. *Roman Catholic Bishop* (1990) 219 Cal.App.3d 843, 854 [268 Cal.Rptr. 550].) Referring first to the policy's general grant of the right to defend and settle claims, SCIF cites several cases which state that as to claims within policy limits, the insurer is entitled to control the defense and the settlement negotiations, without interference by the insured. (*Commercial Union Assurance Companies* v. *Safeway Stores, Inc.* (1980) 26 Cal.3d 912, 919 [164 Cal.Rptr. 709, 610 P.2d 1038]; *Northwestern Mut. Ins. Co.* v. *Farmers' Ins. Group* (1978) 76 Cal.App.3d 1031, 1043 [143 Cal.Rptr. 415]; *Brown* v. *Guarantee Ins. Co.* (1957) 155 Cal.App.2d 679, 684-685 [319 P.2d 69, 66 A.L.R.2d 1202].) But the same authorities also recognize that when resolution of a claim may adversely affect the policyholder in the enjoyment of the policy's benefits and purposes, the insurer becomes obligated, by the implied covenant, to pursue defense and settlement with due, good faith regard to the insured's

interests. The failure-to-settle cases thus confirm that the insurer's discretion in handling claims is restricted when its exercise may impair the insured's interests under the policy.

This case involves premiums (and dividends) rather than liability exposure, and so SCIF further contends that to recognize responsibility on account of premium increases would conflict with plaintiff's agreement, in the policy, to "accept any increase in premium or in the rates of premium which may be promulgated under any rating plan approved by the Insurance Commissioner . . . ." However, the plain significance of this provision points in the opposite direction. Under the policy, plaintiff did not agree to pay such premiums as SCIF might discretionarily charge. Rather, plaintiff agreed to pay premiums fixed by law and regulations. The "Premium" section of the policy, which SCIF quotes, begins by stating that "All premium for this policy will be determined by the Workers' Compensation Rating Bureau's manual of rules, rates, rating plans and classifications." The complaint alleges that this regulated system computes premiums based in part on the policyholder's experience modification, derived from the quantity of outstanding claims and the reserves therefor, which plaintiff alleges SCIF has intentionally and unreasonably failed to minimize or reduce. Thus, plaintiff is bound to pay SCIF—or, allegedly, any successive insurer—a policy premium that SCIF's claims and reserves handling will directly influence. Because the powers so confided in SCIF's discretion will impact the degree of plaintiff's primary burden under the policy, it appears logical that the covenant of good faith and fair dealing indeed requires SCIF to conduct its claims resolution and reserve allocation processes with good faith regard for plaintiff's interests.

This conclusion has been reached by a number of state courts in the context of workers' compensation or other liability insurance policies for which premiums were contractually based, in part, on the amount of money the insurer paid in settlements. Most illustrative is *National Sur. Corp.* v. *Fast Motor Serv.* (1991) 213 Ill.App.3d 500 [572 N.E.2d 1083] (*National Surety*). There, much as here, a workers' compensation policy premium "was determined using an 'experience modifier,' allowing for the premiums to be adjusted annually based upon [the insured's] prior years' losses or 'claim experience.'" (*Id.* at p. 1085.) When the insurer sued to recover the premiums so calculated, the insured counterclaimed, alleging the premiums had been enlarged by the insurer's claims practices, including improper investigation, overpayment, and "overreserving." (*Ibid.*)

The court held that the counterclaim stated a cause of action for breach of the policy's implied covenant of good faith and fair dealing. Analogizing to

the covenant's restriction of the insurer's right to expose the insured to excess liability by refusing settlements, the court stated, "in general, an insurance company is given broad discretion in adjusting claims as long [as] the settlement does not exceed policy limits. [Citation.] However, the general rule is irrelevant here, where the policy limits are not a set figure. When an insurance policy contains a retrospective premium feature, an insurer's failure to act reasonably when adjusting claims automatically subjects the insured to greater financial obligations in the form of increased premium rates." (*National Surety, supra,* 572 N.E.2d at p. 1087.) The court cited three other cases that had made instructively similar holdings. (*Deerfield Plastics v. Hartford Ins.* (1989) 404 Mass. 484 [536 N.E.2d 322]; *Transit Cas. Co. v. Topeka Transp. Co., Inc.* (1983) 8 Kan.App.2d 597 [663 P.2d 308]; *Transport Indemnity Co. v. Dahlen Transport, Inc.* (1968) 281 Minn. 253 [161 N.W.2d 546]; see also *Corrado Bros. v. Twin City Fire Ins. Co.* (Del. 1989) 562 A.2d 1188.)

SCIF disputes that there can be an obligation of good faith and fair dealing in this respect, asserting that even if SCIF predictably and perhaps intentionally enhances plaintiff's required premiums by the way it processes and reserves claims, that does not deprive plaintiff of the benefits of the policy. SCIF relies principally on *New Plumbing Contractors, Inc. v. Nationwide Mutual Ins. Co.* (1992) 7 Cal.App.4th 1088 (*New Plumbing*), which held that an insurer that adversely affected the insured's experience modification factor by not swiftly pursuing its subrogation rights under the policy did not breach the implied covenant. The court reasoned that the insured had "received the full benefits of the agreement" when the underlying claim was paid. It went on to explain, "that the cost of [the insured's] future insurance is increased because of the claim" and the insurer's failure diligently to recoup it "does not implicate [the insured's] receipt of benefits under the contract. It implicates the marketplace aspect of its relationship with [the insurer] . . . ." (*Id.* at pp. 1096-1097.) The court then distinguished the out-of-state cases cited above, including *National Surety,* on grounds they involved charges of improper claims settlement, which was not at issue in *New Plumbing.* (*Ibid.*)

*New Plumbing* does not control here, in part because of the very distinction the court there noted. The present case does challenge the good faith and fair dealing of SCIF's claims settlement practices. Unlike the right of subrogation, which the *New Plumbing* court perceived to be entirely personal to the insurer, these practices have been held subject to the implied covenant, where the insurer's willingness to settle was too low (see *Egan, supra,* 24 Cal.3d at p. 818), too high (*National Surety, supra,* et al.), or, here, too slow. Moreover, with deference to *New Plumbing,* in a regulated "marketplace"

where the insurer's unilateral action can automatically influence the premium rates the insured faces, the insured may rightly be said to have bargained for good faith claims handling not only to avert liability but also restrain other financial burdens the insurer may cause it by gratuitous or intentional discretionary conduct.

SCIF asserts that to measure its practices under a good faith standard would improperly conflict with the workers' compensation rights of claimants, to whom SCIF is directly liable, but who are limited to compensation remedies for insurers' delay (see *Ricard* v. *Pacific Indemnity Co.* (1982) 132 Cal.App.3d 886 [183 Cal.Rptr. 502]), because SCIF would be forced to attune its efforts toward minimizing plaintiff's premiums, as opposed to proper claims determination and payment. The conflict is a false one. A good faith standard does not pit plaintiff's interests against its claimants'. From the standpoint of diligence and proper reserve-setting, the interests of both are identical. Indeed, competent performance at reasonable cost is the combined goal and standard for all professions and businesses, including insurance.

We therefore conclude, in light of all of the authorities heretofore discussed, that the policy's implied covenant of good faith and fair dealing required SCIF to conduct its functions of defending, investigating, reserving, and settling claims with good faith regard for their effect upon plaintiff's premiums, as determined under the policy and governing regulations.

Moreover, a similar conclusion holds true regarding plaintiff's contingent entitlement to dividends under the policy. Although SCIF's allegedly deficient performance does not violate the express terms of the policy concerning dividends, it does potentially qualify as a breach of the obligation of good faith and fair dealing with respect to that policy benefit. In *Mission Ins. Group* v. *Merco Construction Engineers, Inc.* (1983) 147 Cal.App.3d 1059 [195 Cal.Rptr. 781], the court rejected the notion that a workers' compensation insurer possessed unfettered discretion in declaring policy dividends, and held that "the implied covenant of good faith and fair dealing subjects an insurer to liability to its insured for arbitrarily or unreasonably increasing loss reserves covering insurance claims when the increase adversely affects the amount of a dividend that the insured will receive." (*Id.* at p. 1066.) Plaintiff here alleges it suffered similar mistreatment in reserve-setting, as well as through unreasonable delays in settling and paying claims. Whether or not plaintiff will be able to prove that it lost a dividend because of the practices challenged, its claims fall within the scope of the implied covenant's protection of contractual interests and benefits. (See, e.g., *Harm* v. *Frasher* (1960) 181 Cal.App.2d 405, 417 [5 Cal.Rptr. 367].)

### 3. *The Tort Claims.*

Plaintiff's third cause of action, entitled "fraudulent claims practice," essentially set forth a number of instances in which SCIF allegedly delayed resolving claims against plaintiff and increased the reserves for them, both excessively, while concealing these misdeeds from plaintiff. Plaintiff now acknowledges that these allegations do not state a further basis of liability, but rather belong under the heading of breach of the implied covenant of good faith.

Plaintiff makes the same suggestion regarding its final cause, for "negligent misrepresentation," which charges that SCIF negligently underreported plaintiff's payroll to the rating bureau and negligently evaluated the claims and reserves reported, thereby adversely affecting plaintiff's experience modification rating. These allegations do not state a claim for negligent misrepresentation, because the representations in question were not made to plaintiff or relied upon by it. However, the charges concerning claims evaluation and reserving do fit under the rubric of breach of implied covenant. Moreover, the allegations that SCIF negligently miscalculated and reported plaintiff's payroll appear to state a claim for ordinary negligence.

SCIF contends that such a cause of action is barred by the doctrine of exhaustion of administrative remedies, because the rating bureau is empowered to correct erroneous premiums upon a claim by the insured. (See Ins. Code, § 11753.1.) But whether plaintiff has exhausted its administrative remedy, or whether such pursuit has reduced or eliminated plaintiff's alleged damages, cannot be determined on the present record. That record does not foreclose plaintiff's alleging a negligence claim.

Finally, although plaintiff pled its implied covenant claims as being for "contractual breach," it now urges that they also support a tort remedy. In the insurance context, that is so. (*Foley* v. *Interactive Data Corp.*, *supra*, 47 Cal.3d at pp. 684-685.) Plaintiff is entitled to elect between suing in contract or in tort, and the original pleading designations do not bind it. (*Frazier* v. *Metropolitan Life Ins. Co.* (1985) 169 Cal.App.3d 90, 101-102 [214 Cal.Rptr. 883].) Although we do not perceive any substantive advantage in plaintiff's changing the nature of the cause of action, that option remains.

In summary, we hold that the allegations of the first through third causes of action, and part of the fourth, state a cause of action for breach of the implied covenant of good faith and fair dealing, but do not state one for simple breach of the policy, except with respect to the obligation to pay benefits promptly, the meaning of which obligation remains to be clarified.

The "payroll" allegations of the fourth cause of action support a claim for negligence, not negligent misrepresentation. The demurrer accordingly should not have been sustained without leave to amend, and on remand plaintiff shall be entitled to file a third amended complaint in conformity with this decision.

## DISPOSITION

The judgment is reversed and the superior court is directed to grant leave to file an amended complaint. Plaintiff shall recover costs.

Gates, Acting P. J., and Nott, J., concurred.

Respondent's petition for review by the Supreme Court was denied October 21, 1993.