Opinion
 

 BOREN, P.J.
 

 MacGregor Yacht Corporation (MacGregor) sued its workers’ compensation insurer, State Compensation Insurance Fund (SCIF), to
 
 *452
 
 recover in tort and in breach of express and implied contract for damages resulting from the insurer’s failure to investigate, defend and settle claims reasonably and from its overestimate of the amounts necessary for claims reserves. The trial court dismissed the tort cause of action as barred by the statute of limitations. Following a nonjury trial on the breach of contract claims, the court found that SCIF breached the express terms of the contract, based on SCIF’s failure to conduct any follow-up investigation into many of the workers’ compensation claims and its failure in some instances to deny the claims within the statutory 60-day period. The court also found SCIF breached the implied covenant of good faith and fair dealing by refusing to permit the insured access to claim files or other relevant claims data, refusing or failing to settle claims reasonably, setting unreasonably high reserves, modifying and concealing its reserving practices which maximized receipts at the expense of its insureds, and setting reserves at a “maximum probable potential” exposure rather than at the most probable result of the case.
 

 SCIF appeals from the $300,000 judgment against it on the contract claims.
 
 [1]
 

 Facts
 

 MacGregor is a family-owned business which manufactures engine-powered sailing boats made of fiberglass. The company is wholly owned by Roger MacGregor and his wife. The company employs between 100 and 150 people, depending upon the manufacturing season. Most of the employees are unskilled laborers making minimum wage. Many are immigrants who often do not hold valid green cards. The manufacturing facility is set up in such a way that unskilled labor is all that is required to build the boats.
 

 MacGregor purchased from SCIF five consecutive one-year workers’ compensation insurance policies. The first policy began on December 31, 1986, and the last policy expired on December 30, 1991. During the five-year period of the policy, MacGregor’s employees filed seventy-five disability claims, a rate of over 10 percent of the workforce per year.
 

 MacGregor believed many of the claims had been filed because workers were angry about being periodically laid off or fired, and that the claims
 
 *453
 
 were retaliatory or fraudulent. Many of the claims were filed after employees were terminated and were stress claims. MacGregor alleged that a number of the claims were filed by the same attorney, and that many of the stress claims had carbon copy symptoms and were mirror images of numerous other claims.
 

 MacGregor’s experience modification factor, which is used to set its insurance premiums, was higher than the industry average. MacGregor blamed its high experience modification factor, and thus its high premiums, on SCIF’s improper overestimates of the amounts necessary for claims reserves and on SCIF’s inefficient and substandard handling of claims. MacGregor’s complaint alleged, inter alia, breach of contract, tortious breach of the implied covenant of good faith and fair dealing, and negligence. After the trial court dismissed the tort causes of action on the basis of the statute of limitations, it permitted MacGregor to amend its complaint to include a contractual claim for breach of the implied covenant of good faith and fair dealing. The parties then proceeded to a nonjury trial on the two contract claims, breach of express contract and breach of the implied covenant.
 

 SCIF on appeal complains at various points about the purported misapplication of facts and disputes the significance of some of the facts adduced at trial, and MacGregor replies that substantial evidence supports the judgment. Nonetheless, as SCIF essentially raises legal issues and does not specifically contend on appeal that the judgment is not supported by substantial evidence (except as to one aspect discussed hereinafter), a detailed recitation of witness testimony and other evidence is unnecessary.
 

 It is thus sufficient to quote the following from the trial court’s findings and reasoning in its statement of decision: “Plaintiff has established by a preponderance of the evidence that the defendant breached its contract with him by the way in which certain claims were handled during the term of his insurance contracts. In some of the instances, the reserves were set unreasonably high. In some cases, reserves were set at high amounts after the cases had been settled for substantially lessor [szc] amounts or after the defendant knew or should have known that the cost of the case would not merit the high amount of the reserve. Investigation of some of the claims was poorly done. There was no follow up investigation on many of the claims. Many of the claims were ‘post-termination’ claims where an employee never made any complaint of injury while employed but after having been laid off or fired claims various workers compensation injuries. These cases were eventually either abandoned by the employee claimant or settled for very small amounts of money by the defendant SCIF. Nevertheless, very
 
 *454
 
 high reserves were maintained for these claims. [¶] It is apparent that certain of the employees of SCIF felt that Mr. MacGregor did not run a good shop. The defense expert testified that in her opinion Mr. MacGregor’s plant was not a safe place to work and that Mr. MacGregor took advantage of his employees. In any event, it is apparent that the fund did not have confidence in plaintiff, its insured, and conducted his files accordingly. [¶] Both testifying experts and the witnesses who were employees of SCIF testified that reserves should be set on a case-by-case basis based on the most likely outcome of the claim. However, starting in June, 1989 the defendant changed its policy and amended its claims manual to state that reserves should be set at the ‘maximum probable potential’ cost of the claim. Although defendant’s employees and expert witness deny that this amended standard would lead to the setting of unreasonably high reserves, the court finds their denials unpersuasive. The court further finds that the evidence establishes an inference that SCIF intentionally built up reserves because of what it perceived as an unreasonably liberal attitude by the Workers Compensation Appeals Board and the compensation system. The express policy of the Fund was to set reserves at a maximum possible potential exposure, which was violative of the implied covenant of good faith and fair dealing in that the correct practice was to set the reserves at the most probable result of the case. [¶] In some instances, the fund neglected to deny the claims within the statutory 60 days of Lab. C. 5402, which had the effect of shifting the burden of proof on the issue of compensable injury from the claimant to the defendant. Claims people acknowledged this error in writing in the files, and paid higher settlements and set excessive reserves because of those errors. [¶] Plaintiff’s expert Mr. Oaklee Van Slyke expressed the opinion that the plaintiff was damaged in the sum of $367,359.00 because of miscoding and overstatements of reserves. With interest, he felt the plaintiff’s damages was $433,983.00. It is true that Mr. Van Slyke did not go through a determination of the exact system or method by which his calculations were done. He testified, however, that his calculations were based on the conclusions of plaintiff’s liability expert, Mr. Smith, on a case by case basis. [¶] The issue of ‘medical-legal’ costs is not before this Court as it is an issue now pending before an administrative tribunal. [¶] Defendant admitted no error in its claims handling or reserving practices. The opinion advanced by their liability expert, Ms. Jacqueline Secia[,] was that she believed that all of the claims practices were correct, there was no questionable decision made, and all the work was of high quality. Even though she conceded that some claims were not denied in time, she opined that that was an immaterial omission that merely resulted in a rebuttable shift of the burden of proof. [T]he court finds that her opinion is not credible. [¶] The defendant declined to present any testimony or evidence as to damages and declined to present any evidence on the question of the relationship between the x-mod [experience modification factor] and the premiums charged the plaintiff.”
 

 
 *455
 
 Discussion
 

 Breach of Express Contract
 

 SCIF contends that its failure to investigate, defend or settle claims properly cannot as a matter of law support a theory of liability based on breach of an express contractual duty. It is undisputed that the terms of the insurance contract between the parties obligate SCIF to defend at its expense any workers’ compensation claim and give SCIF the right to investigate and settle these claims. However, contrary to SCIF’s incorrect assumption, its contractual obligations do not merely begin and end with a defense of any sort followed by payment of claims, regardless of the adequacy and promptness of its investigation of claims.
 

 SCIF’s entire argument rests upon the following out-of-context sentence from this court’s opinion in
 
 Security Officers Service, Inc.
 
 v.
 
 State Compensation Ins. Fund
 
 (1993) 17 Cal.App.4th 887, 894 [21 Cal.Rptr.2d 653]: “Because the policy language granting and imposing these rights [to defend, investigate and settle] and duty [to defend claims] says no more about how they are to be carried out, SCIF correctly argues that its challenged practices do not violate that language.” However,
 
 Security Officers
 
 also emphasized, in pertinent part, the following: “The policy specifically requires SCIF to ‘pay promptly when due to those eligible under this policy the benefits required [of plaintiff] by the workers’ compensation law.’ SCIF contends this language prescribes only a duty to disburse payments that have become due (presumably by and after adjudication or settlement), and therefore plaintiff’s allegations of slow and expensive claims resolution do not describe a breach of the obligation.
 
 That may or may not be true. Another facially permissible construction of the ‘prompt payment’ obligation is that it accrues when a sufficiently definite case of workers’ compensation liability is made out. Under that interpretation, plaintiff’s allegations of delay in resolving claims may signify violations. At this stage, the policy cannot necessarily be said to bear the more restricted meaning.” (Id.
 
 at pp. 893-894, italics added.)
 

 As this court subsequently reiterated in
 
 Lance Camper Manufacturing Corp.
 
 v.
 
 Republic Indemnity Co.
 
 (1996) 44 Cal.App.4th 194 [51 Cal.Rptr.2d 622], “In regard to the insured’s express and implied contract claims, we concluded in
 
 Security Officers
 
 that these survived demurrer. [T]he insurer’s alleged ‘pattern of failing to pay claims promptly, defend them diligently, or assign them reasonable reserves, followed by improperly failing to pay plaintiff dividends’ (17 Cal.App.4th at p. 893)
 
 could amount to a breach of the policy’s express terms.” (Lance Camper, supra,
 
 at p. 201, italics added;
 
 *456
 
 see also
 
 Tricor California, Inc.
 
 v.
 
 State Compensation Ins. Fund
 
 (1994) 30 Cal.App.4th 230, 239 [35 Cal.Rptr.2d 550].)
 

 ■As in the above cited cases, MacGregor not only challenged in its cause of action for breach of implied covenant the
 
 manner
 
 in which SCIF mishandled claims, but. also by its cause of action for breach of express contract challenged SCIF’s
 
 failure to perform.
 
 Indeed, for example, the trial court found there was “no follow-up investigation of many of the claims,” and in some instances SCIF neglected to deny the claims within the statutory 60 days. Obviously, the failure to investigate and the failure to deny claims when it should have reflected breaches of the contract, as opposed to the duty imposed by law that the insurer act fairly and in good faith.
 

 Breach of the Implied Covenant of Good Faith and Dealing
 

 SCIF contends that its reserving practices, its claims handling practices, and its restriction of employer access to claims files did not violate the implied covenant of good faith and fair dealing. Such assertions are without merit.
 

 “ ‘Because the powers so confided in SCIF’s discretion will impact the degree of plaintiff’s primary burden under the policy, it appears logical that the covenant of good faith and fair dealing indeed requires SCIF to conduct its claims resolution and reserve allocation processes with good faith regard for plaintiff’s interests.’ ”
 
 (Tricor California, Inc.
 
 v.
 
 State Compensation Ins. Fund, supra,
 
 30 Cal.App.4th at p. 240.) “[T]he alleged mishandling of claims by an insurer occasioned by the hiring of inadequate legal and medical advisers and insufficient defense investigation and resolution of pending claims implicates the insurance policy’s implied covenant of good faith and fair dealing, which ‘imposes limits on the insurer’s latitude in discharging its contractual right or duty to defend, investigate and settle claims.’ ”
 
 (Lance Camper Manufacturing Corp.
 
 v.
 
 Republic Indemnity Co., supra,
 
 44 Cal.App.4th at pp. 201-202.)
 

 Improper Reserving Practices by SCIF
 

 As to SCIF’s reserving practices, it argues that it is entitled to wide latitude because adequate reserves are essential to its solvency and it must prudently avoid the risk of “under reserves” and unlawful practices, and that the liberal nature of the local WCAB cannot be ignored when setting reserves. We acknowledge that “courts are unqualified to second-guess the determinations made by an insurer . . . as to the amount of funds that are reasonably necessary to assure adequate funds to cover catastrophic
 
 *457
 
 losses . . . .”
 
 (Lee
 
 v.
 
 Interinsurance Exchange
 
 (1996) 50 Cal.App.4th 694, 710-711 [57 Cal.Rptr.2d 798].) “[Assuring the availability of adequate funds to cover losses is plainly a rational business purpose of an insurer.”
 
 (Id.
 
 at p. 711.) Also, an insurer’s loss reserves are not necessarily the same as its settlement authority
 
 (Lipton
 
 v.
 
 Superior Court
 
 (1996) 48 Cal.App.4th 1599, 1613 [56 Cal.Rptr.2d 341]), and “a particular reserve amount may be substantially more or less than the amount ultimately paid on a particular claim.”
 
 (Ibid.)
 
 Nonetheless, and despite the alleged liberal nature of the local WCAB, for an insurer to fulfill its obligation not to impair the right of the insured to receive the benefits of the agreement, the insurer “is obligated to give the interests of the insured at least as much consideration as it gives to its own interests.”
 
 (Silberg
 
 v.
 
 California Life Ins. Co.
 
 (1974) 11 Cal.3d 452, 460 [113 Cal.Rptr. 711, 521 P.2d 1103].)
 

 SCIF also contends that its unique “maximum probable potential” reserving language was reasonable, and that the failure to disclose to MacGregor its change in reserving language was irrelevant. Substantial evidence, from the testimony of SCIF’s government liaison officer, established that in changing its reserving philosophy, SCIF gave no consideration to the interests of its insureds. This was improper.
 
 (Silberg
 
 v.
 
 California Life Ins. Co., supra,
 
 11 Cal.3d at p. 460.)
 

 Moreover, without any specific evidence that SCIF’s reserves were somehow inadequate to cover its obligations, in July 1989 SCIF approved and adopted a new company policy which modified the concept of adequate reserves. Previously adequate reserves were reserves based on “a realistic evaluation of all information in the file which reflects the reasonably anticipated final costs.” Such an approach satisfied SCIF’s obligation, pursuant to Insurance Code section 923.5, to have a reserve for “all losses and claims for which the insurer may be liable.”
 

 However, SCIF’s new reserving language defined adequate reserves as the “maximum probable potential cost.” And, in “questionable cases” under the new policy (e.g., where there is an issue as to whether the injury arose out of the course of employment), “estimates should reflect full liability until a W.C.A.B. judge has ruled that [SCIF] has less than full liability.” The “maximum probable potential” standard means that the adjuster reserves for the absolute most SCIF may have to pay without any exercise of discretion or judgment as to the realistic value of each claim. The unreasonableness of such a policy and its adverse impact on insureds are highlighted by SCIF’s admission that the greater the claim reserves, the greater the insured’s loss history, which in large part determines the insured’s experience modification factor—which in turn is used by SCIF to calculate the insured’s premium. Claim reserves also impact whether an insured receives a dividend or not.
 

 
 *458
 
 The trial court found that SCIF’s policy would lead to “unreasonably high reserves.” As SCIF so adversely redefined its reserve policy, admittedly without any consideration for the interests of the insured, and did so without any concrete evidence of any fiscal necessity to do so, its reserve policy was unreasonable as a matter of law. Essentially, SCIF sought to avoid that which it must accept—the very real business risk that a particular claim may have been underreserved.
 
 (Lipton
 
 v.
 
 Superior Court, supra,
 
 48 Cal.App.4th at p. 1613.) SCIF apparently sought guaranteed fiscal stability and a no-risk business enterprise through the security of reserves for full liability. Rather, SCIF should have limited reserves to “the amount anticipated to be sufficient to pay all obligations for which the insurer may be responsible under the policy with respect to a particular claim.”
 
 (Ibid.;
 
 see Ins. Code, § 923.5.) Accordingly, apart from whether SCIF erred in failing to disclose to MacGregor its change in reserving language, the trial court did not err in concluding that SCIF breached its duty of good faith and fair dealing to MacGregor.
 

 Improper Claims Handling Practices by SCIF
 

 As to SCIF’s claims handling practices, it challenges the sufficiency of the evidence to support the court’s finding that SCIF breached the implied covenant of good faith and fair dealing by failing to investigate, defend and settle claims reasonably. SCIF improperly attempts to rehash conflicts in the evidence, ignoring the well established principle that an appellate court may not reweigh the evidence or determine the credibility of witnesses where the evidence at trial was in conflict. (See
 
 Western States Petroleum Assn.
 
 v.
 
 Superior Court
 
 (1995) 9 Cal.4th 559, 571 [38 Cal.Rptr.2d 139, 888 P.2d 1268].) To the extent the evidence gives rise to conflicting reasonable inferences, which SCIF in large part acknowledges in its footnote discussions of contrary evidence, the trial court’s finding supported by substantial evidence is binding on an appellate court.
 
 (Rubin
 
 v.
 
 Los Angeles Fed. Sav. & Loan Assn.
 
 (1984) 159 Cal.App.3d 292, 298 [205 Cal.Rptr. 455].)
 

 SCIF also complains about an alleged lack of causation as to damages. First, its reliance upon
 
 Travelers Ins. Co.
 
 v.
 
 Lesher
 
 (1986) 187 Cal.App.3d 169 [231 Cal.Rptr. 791], for the notion that MacGregor should have conducted a “trial-within-a-trial” as to each worker’s compensation claim to establish that SCIF’s failure to investigate claims caused its damages, is misplaced. The trial-within-a-trial formula is applicable in a wide variety of professional malpractice cases predicated upon negligence.
 
 (Mattco Forge, Inc.
 
 v.
 
 Arthur Young & Co.
 
 (1997) 52 Cal.App.4th 820, 831-837 [60 Cal.Rptr.2d 780].) “Because the present action is not predicated on negligence, it is not analogous to a professional malpractice action, and
 
 Lesher
 
 is not controlling.”
 
 (Amato
 
 v.
 
 Mercury Casualty Co.
 
 (1997) 53 Cal.App.4th 825, 837 [61 Cal.Rptr.2d 909].)
 

 
 *459
 
 Second, SCIF ignores the fact that the California Supreme Court in
 
 Gray
 
 v.
 
 Zurich Insurance Co.
 
 (1966) 65 Cal.2d 263, 280 [54 Cal.Rptr. 104, 419 P.2d 168], “rejected imposing on the insured ‘ “the impossible burden” of proving the extent of the loss caused by the insurer’s breach.’ ”
 
 (Amato
 
 v.
 
 Mercury Casualty Co., supra,
 
 53 Cal.App.4th at p. 839.) The
 
 Gray
 
 court concluded that sustaining a theory that insureds must prove that they would have been able to successfully defend a claim which the insurer refused to defend “ ‘would tend ... to encourage insurance companies to similar disavowals of responsibility with everything to gain and nothing to lose.’ ”
 
 (Gray
 
 v.
 
 Zurich Insurance Co., supra,
 
 65 Cal.2d at p. 280, quoting
 
 Arenson
 
 v.
 
 National Auto. & Cas. Ins. Co.
 
 (1957) 48 Cal.2d 528, 539 [310 P.2d 961].) Moreover, contrary to SCIF’s assertion, it is of no consequence whether SCIF refused to defend or, as established here, offered a perfunctory or inadequate defense and on occasion no investigation. Both are improper, and the latter more insidious.
 

 Denial of Access to Claims Files
 

 The final basis for SCIF’s breach of the implied covenant of good faith and fair dealing was its refusal to allow claim file audits. Although SCIF alleges the policy was designed to protect the privacy rights of injured workers, such solicitous concern was nowhere expressed in any of SCIF’s internal memos on the issue. The evidence established that SCIF’s managers were instructed that claim files could not be reviewed by an insured or its representative, and that if an insured sought claims file information, a meeting should be scheduled at which time “pattern-type questions” should be asked designed to “challenge the expertise” of the insured’s representative. SCIF admittedly made no effort to sort out which types of documents would be considered confidential and which would not. SCIF made no effort, for example, to redact and protect allegedly sensitive and private information not relevant to the insured’s inquiry, and then to disclose only the relevant information sought. The trial court was therefore reasonable in concluding as a matter of law that, despite any general privacy interests of the injured employees, the wholesale and indiscriminate refusal by SCIF in all cases “to permit the insured access to claim files or other relevant claims data” constituted a “breach of the implied covenant of good faith and fair dealing.”
 

 The Damage Award Was Proper
 

 At trial, an actuarial analyst testified that MacGregor was damaged by SCIF’s overreserving in the form of higher premiums and a deprivation of dividends in the sum of $367,359. He arrived at this figure by applying
 
 *460
 
 the audited claims reserves established by MacGregor’s claims expert, and then using the same formula as used by the Workers’ Compensation Insurance Rating Bureau to recalculate MacGregor’s experience modifier, as it would have been had SCIF’s reserves been reasonable. The actuary then determined the amount of excess premium and loss of dividend suffered as a result of SCIF’s improper reserving practices. There was nothing speculative about the actuary’s damage analysis. He used the same formulas used by the insurance industry to calculate workers’ compensation insurance premiums. Although the actuary did not perform the mathematical calculations during his testimony, he explained his methodology and SCIF presented no evidence controverting the actuary’s analysis. SCIF also acknowledges on appeal “the formulae for the calculation are set by law.”
 

 The trial court remarked in its statement of decision that the actuary’s testimony was “subject to criticism for lack of specificity in the way by which he computed his numbers, [but] his testimony [was] generally credible. The fact of damage in this case is very clear, [but] the amount is more difficult to ascertain.” Thereafter, the trial court, awarding only $300,000, apparently reached its own conclusion as to the amount of damages and adopted a somewhat lower figure than that arrived at by the actuary.
 

 SCIF’s effort to impeach the trial court with its remarks contained in the statement of decision is unavailing. An appellate court reviews the correctness of the trial court’s judgment or order, not the correctness of its reasoning. (See
 
 West Pico Furniture Co.
 
 v.
 
 Superior Court
 
 (1961) 56 Cal.2d 407, 413-414 [15 Cal.Rptr. 119, 364 P.2d 295];
 
 Stewart Development Co.
 
 v.
 
 Superior Court
 
 (1980) 108 Cal.App.3d 266, 275 [166 Cal.Rptr. 450].) Accordingly, SCIF’s contention that MacGregor failed to prove the amount of damages it suffered, despite the uncontradicted testimony of the actuary, is without merit.
 

 Equally unavailing is the assertion that the damage award was excessive. SCIF notes that the actuary gave two possible damage numbers. The first, $367,359 ($433,983, with interest) included damages from SCIF’s alleged misreporting medical-legal claims. The second, $303,000 (excluding interest), did not. SCIF notes that the trial court indicated it was not ruling on the issue of medical-legal costs and thus reasons that court erred in using the higher figure which included approximately $64,000 in medical-legal reporting damages. SCIF therefore argues that the trial court should have reduced the $303,000 figure, not the $367,359 figure. However, the court’s final determination of $300,000 was obviously below both those figures, and we
 
 *461
 
 decline the invitation to impeach the trial court’s reasoning or disturb the exercise of its broad discretion in setting damages.
 

 Moreover, since substantial evidence supports a higher damage award, it certainly supports the lower amount awarded. Any error would be nonprejudicial.
 

 Disposition
 

 The judgment is affirmed. MacGregor is entitled to costs on appeal.
 

 Fukuto, J., and Zebrowski, J., concurred.
 

 A petition for a rehearing was denied April 29, 1998, and appellant’s petition for review by the Supreme Court was denied July 29, 1998.
 

 [1]
 

 MacGregor had cross-appealed from that portion of the judgment dismissing its tort claim for breach of the implied covenant of good faith and fair dealing but voluntarily abandoned its cross-appeal. That appeal has been dismissed. Moreover, we deny MacGregor’s request for judicial notice of a trial court judgment, in an unrelated case, wherein the court issued a statewide injunction requiring SCIF to delete the term “maximum probable potential” from its claims estimating manual.