[No. B131976. Second Dist., Div. Two. July 23, 2001.]

LANCE CAMPER MANUFACTURING CORPORATION, Plaintiff and Appellant, v.
REPUBLIC INDEMNITY COMPANY OF AMERICA, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

---

*Under California Rules of Court, rules 976(b) and 976.1, only the Introduction, the Discussion, parts I.A. and II. in Republic's Appeal, and the Disposition are certified for publication.

---

**COUNSEL**

Mahoney, Coppenrath & Jaffe, Walter G. Coppenrath, Jr., Howard M. Jaffee, Arthur L. Martin; Sheldon & Mak, Marilyn M. Smith; and Edward J. Horowitz for Plaintiff and Appellant.

Horvitz & Levy, Christina J. Imre, H. Thomas Watson; Crosby, Heafey, Roach & May, Christina J. Imre, Raymond A. Cardozo; Hancock, Rothert & Bunshoft, Ray L. Wong and Vipal Patel for Defendant and Appellant.

Finnegan, Marks & Hampton, Michael A. Marks and Ellen Sims Langille for California Workers' Compensation Institute as Amicus Curiae on behalf of Defendant and Appellant.

## OPINION

### BOREN, P. J.—

#### INTRODUCTION

A workers' compensation insurer, Republic Indemnity Company of America (Republic), appeals after a jury awarded $6.3 million in compensatory and punitive damages in an insurance bad faith and breach of contract action brought by an insured employer, Lance Camper Manufacturing Corporation (Lance Camper).

Contrary to Republic's contentions, the award of contract damages is supported by substantial evidence, and no instructional error occurred regarding the concept of bad faith. There is no requirement that Lance Camper establish Republic's conduct in setting reserves was inconsistent with what another "reasonable insurer" might do. Rather, the standard as to reserves is that they must be set at the reasonable expectation of the claim's value. Nor is there any merit to Republic's invitation essentially to judicially legislate a new theory limiting the tortious breach of the implied covenant of good faith and fair dealing only to violations of a public duty independent of the contract. And the jury was properly instructed on punitive damages, which were supported by clear and convincing evidence.

We also find largely unavailing Lance Camper's cross-appeal seeking prejudgment interest on certain attorney fees and recovery of several additional cost items. The trial court properly denied the requested prejudgment interest and did not abuse its discretion as to costs, except as to court reporter fees that are mandated by statute.

In the published portion of this opinion, we address only breach of contract and tort damages issues.

#### FACTUAL AND PROCEDURAL SUMMARY*

. . . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante,* page 1151.

DISCUSSION

*Republic's Appeal*

I. *The award of contract damages*

A. *Breach of contract*

■ Republic urges that the award of contract damages should be reversed because the jury's finding of breach of contract is not supported by substantial evidence. But the substantial evidence contention is novel because of Republic's theory that Lance Camper was required but failed to prove conduct inconsistent with what a reasonable insurer might do.

■ We start from the undisputed premise that an insurer's pattern of failing to pay claims promptly, defend them diligently, or assign them reasonable reserves, followed by improperly failing to pay dividends to the insured, may constitute breach of the express and implied contractual terms in a workers' compensation insurance policy. (*Lance Camper Manufacturing Corp. v. Republic Indemnity Co.* (1996) 44 Cal.App.4th 194, 202 [51 Cal.Rptr.2d 622] (hereinafter *Lance Camper I*); *Tricor California, Inc. v. State Compensation Ins. Fund* (1994) 30 Cal.App.4th 230, 234-235 [35 Cal.Rptr.2d 550]; *Security Officers Service, Inc. v. State Compensation Ins. Fund* (1993) 17 Cal.App.4th 887, 893 [21 Cal.Rptr.2d 653].) As we stated in *Lance Camper I, supra,* 44 Cal.App.4th at page 202, "[A] failure to reasonably evaluate claims prior to setting reserves, inadequate monitoring of claims by the insurer, failure to minimize claims, failure to communicate with the insured, hiring of inadequate and incompetent legal and medical counsel, [and] unnecessary delays in closing claims" constitute claims handling practices that are actionable.

■ We also acknowledge that, as to the major issue of the setting of reserves, it is a task that requires the exercise of judgment and is not an exact science. Insurers have discretion in setting reserves, and there is an acceptable range of reserves a carrier could set without incurring liability. " '[A] particular reserve amount may be substantially more or less than the amount ultimately paid on a particular claim.' " (*MacGregor Yacht Corp. v. State Comp. Ins. Fund* (1998) 63 Cal.App.4th 448, 457 [74 Cal.Rptr.2d 473] (hereinafter *MacGregor*).)

■ Republic's theory of the lack of substantial evidence of its breach of contract, however, goes where no case has gone before. Republic's argument is that Lance Camper should have been required to establish that

the reserves Republic set (and the incurred but not reported (IBNR) fee it imposed as a present charge for potential future claims) were outside the range of permissible decisions that other carriers could have made. This notion, for which there is no legal support directly on point, is without merit for several reasons.

Republic's proposed rule would permit insurers deliberately to set reserves at the highest end of the spectrum, thus resetting the range of typical reserves and skewing it to the high end. Insurers could also conveniently put a legal rubber stamp of approval on their prevailing practices. Insurers could establish and self-validate their own prevailing practices of setting high reserves, without regard for the need to act in good faith and contrary to the insurer's "obligat[ion] to give the interests of the insured at least as much consideration as it gives to its own interests." (*Silberg v. California Life Ins. Co.* (1974) 11 Cal.3d 452, 460 [113 Cal.Rptr. 711, 521 P.2d 1103]; see *MacGregor, supra,* 63 Cal.App.4th at p. 457.)

For example, if the prevailing custom among insurers were to set reserves with a worst-case scenario analysis, those improperly high reserves would, according to Republic's reasoning, become reasonable and proper. That cannot be. Simply put, as a mother might say to her child, just because other insurers do it, does not necessarily make it right. We adhere to the current standard requiring that reserves be set at the reasonable expectation of the claim's value and decline the invitation to create by judicial fiat a new rule.

Even assuming arguendo that Republic's proposed new rule applied, the evidence in the present case actually meets even the greater burden that Republic seeks to impose. Lance Camper expert witness Frank Raab testified that under the insurance industry's standards, as a rule of thumb, reserves on a claim more than one year old should be no more than approximately 10 percent higher than the amount actually paid at the time of closing. Even Republic's own expert witness, Robert Hollingshead, stated it was the industry standard that at the time of closing, reserves should not exceed the actual closing cost by more than 20 percent. But, as explained by Raab, Republic over-reserved Lance Camper's claims by approximately 45 percent at the time of closing. Taking into consideration Republic's $2,500 add-on fee, which applied in 24 of the 34 files for which records existed, the situation was even more egregious. Republic over-reserved by approximately 60 percent. Though Hollingshead came to a different conclusion using different figures, the jury was entitled to find that portion of his testimony not credible.

Moreover, it is reasonable to infer that other insurers generally adhered to Raab's description of the insurance industry standard and rule of thumb on

the range of typical reserves, otherwise it would not be a "standard" or "rule of thumb." Accordingly, Republic's over-reserves of approximately 45 or 60 percent were far beyond any acceptable range, i.e., far beyond the range of 10 percent above actual cost (or 20 percent according to Hollingshead), which other carriers would have set. It is thus apparent not just that Lance Camper's experts may have set reserves differently, but that substantial evidence and reasonable inferences therefrom established that Republic set reserves beyond the range generally acceptable in the industry.

Lance Camper expert witness Robert Drake also specifically testified that Republic's increases in reserves, on the claims that resulted in the substantial reduction in dividends payable to Lance Camper, were (1) timed to eliminate or reduce those dividends, and (2) based upon a "worst-case scenario" analysis rather than the required reasonable expectation of the claim's value. Republic also ignores its improprieties that contributed to higher reserve settings over a longer period of time, and thus reduced dividends payable to Lance Camper. For example, Republic ignores substantial evidence that as to some claims it did not properly develop evidence in defense of claims, that it delayed for unreasonable periods of time taking action on claims (with claims sometimes open for years longer than they should have been), and that it unreasonably imposed charges such as the IBNR. All of these tactics contributed to reductions in the dividends to Lance Camper.

Republic also inappropriately relies upon several statutory provisions. Republic urges that Drake improperly disregarded the medical opinion of the workers' doctors, contrary to California's public policy, as codified in Labor Code section 4062.9, which requires carriers to presume the medical reports prepared by the workers' treating physicians are correct unless those reports are rebutted by the preponderance of medical opinion from other qualified examiners.[3] First, this argument ignores the evidence that, in many cases where Republic should have obtained its own reports to rebut claimants' medical reports, it failed to do so. Second, there is no indication the statute in question was intended to discourage an insurer from obtaining rebuttal medical evidence where appropriate. Indeed, as indicated by evidence at trial of the custom and practice in the industry and as noted in our prior opinion in *Lance Camper I, supra,* 44 Cal.App.4th at pages 201-202, to handle claims properly it may often be appropriate to retain medical advisors. Finally, even if Republic's inappropriately restrictive reading of the

---

[3]Labor Code section 4062.9, provides as follows: "In cases where an additional comprehensive medical evaluation is obtained under Section 4061 or 4062, the findings of the treating physician are presumed to be correct. This presumption is rebuttable and may be controverted by a preponderance of medical opinion indicating [a] different level of impairment. However, this presumption shall not apply where both parties select qualified medical examiners."

statute was correct, Labor Code section 4062.9 (added by Stats. 1993, ch. 121, § 33, pp. 1279-1280, eff. July 16, 1993) became effective after the operative period of time in the present case.

Equally unavailing is Republic's fanciful reliance on Insurance Code section 11558, subdivision (a), to conclude that it must set reserves at a minimum of 65 percent of the premium charged for the policy, less the amounts already incurred for losses and expenses.[4] According to Republic, since Drake testified that Republic's reserves should have been between 37 percent, 39 percent and 29 percent, of the net available premium for, respectively, the policy years 1986, 1987 and 1988, had Republic used Drake's reserving standard, its reserves would have been far below the legal minimum.

The above noted statute, however, does not apply to individual claims. Rather, it applies to all of a carrier's insurance in force, as indicated by the statute's reference to "the lines of business described in the annual statement." (Ins. Code, § 11558.) Indicative of the inapplicability of section 11558 is the potential mathematical impossibility of its application. For example, an insurer could not possibly set reserves at 65 percent of the net available premium, i.e., the premium charged for the policy less amounts already incurred for losses and expenses, if that individual claim or the total claims made were less than the 65 percent figure. Under Republic's reasoning, assuming a $450,000 premium paid (which was the average of the three premiums Lance Camper paid for each of the three policies), the total reserves on claims against the policy would have to be set at $292,500, beginning with the first claim made. The statute thus is inapplicable to the analysis of individual claims.

Nor is there any merit to Republic's claim that Lance Camper expert witness Wing Chew failed to support Republic's liability as to the IBNR charge. An IBNR charge, of course, may be imposed when warranted, and other insurers during the time period in question imposed such a charge on their insureds. Republic asserts on appeal that it imposed the IBNR charge on Lance Camper "so it could remain solvent." But Republic's former senior

---

[4]Insurance Code section 11558 provides, in pertinent part, as follows: "The minimum reserve requirements prescribed by the commissioner in regulations promulgated pursuant to Section 923.5 for outstanding losses and loss expenses for each of the most recent three years for coverages included in the lines of business described in the annual statement as workers' compensation, liability other than automobile bodily injury, and automobile liability bodily injury shall not be less than the following: [¶] (a) For workers' compensation, 65 percent of earned premiums during each year less the amount already paid for losses and expenses incidental thereto incurred during each such year."

vice-president did not assert insolvency as the reason for imposing the IBNR. He only asserted that "claims had deteriorated to the point that the dividends could not be paid as they had previously been quoted." To the extent there was such testimony that supported Republic's claim of feared insolvency, we must conclude that the jury rejected it on credibility grounds, as it apparently did with other testimony from Republic's witnesses.

Republic also ignores evidence that it imposed the IBNR charge in a manner that reflected bad faith. Specifically, Republic imposed the charge by a decision of its senior staff, rather than its board of directors. Republic also imposed the charge retroactively to cover every claim ever made by a Lance Camper employee, even though the alleged financial crisis did not arise until months into Lance Camper's second insurance policy with Republic. And when Republic withdrew the IBNR charge, it did so only prospectively. Although Republic urges deference to a company's business judgment in imposing the IBNR, the business judgment must be made in good faith. (See *Notrica v. State Comp. Ins. Fund* (1999) 70 Cal.App.4th 911, 925 [83 Cal.Rptr.2d 89].) Republic's liability was thus properly based in part on its imposition of the IBNR charge.

Accordingly, substantial evidence supports Republic's breach of contract.

B.   *No instructional error\**

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

II.   *The award of tort damages*

■     Republic attacks the tort damages by contending there was no competent evidence it breached any contractual duty owed to Lance Camper, and that any breach of the implied covenant of good faith and fair dealing is tortious only if Republic acted unreasonably. (See *Brandt v. Superior Court* (1985) 37 Cal.3d 813, 819 [210 Cal.Rptr. 211, 693 P.2d 796], hereinafter *Brandt*; *Love v. Fire Ins. Exchange* (1990) 221 Cal.App.3d 1136, 1151 [271 Cal.Rptr. 246].) Republic asserts that, as a matter of law, it acted reasonably because there was evidence its conduct was consistent with applicable statutes and regulations, industry practices, and the advice of counsel.

Republic, however, essentially ignores Lance Camper's evidence and various admissions by Republic's own employees. Republic apparently seeks to avoid application of the substantial evidence standard on appellate

*\*See footnote, *ante*, page 1151.*

review. And, as discussed above, its reliance on purported compliance with several statutes and industry practices is unavailing. Nor does Republic provide any authority for the notion that advice from counsel can insulate it from tort liability.

Republic also urges, for the first time on appeal, the theory that it could only be liable in tort if it violated a public duty independent of the contract. Republic acknowledges that this court and others have repeatedly held, without the limitation now urged, that a workers' compensation insurer may be liable in tort for offending conduct that diminishes the employer's dividend or increases future premiums. (See, e.g., *Notrica v. State Comp. Ins. Fund, supra,* 70 Cal.App.4th at pp. 924-925, and cases cited therein; *Security Officers Service, Inc. v. State Compensation Ins. Fund, supra,* 17 Cal.App.4th at p. 899.) Republic urges this new limitation on tort liability, as indicated in its brief, "primarily to preserve it for Supreme Court review." We find the contention unavailing because it constitutes an unwarranted limitation on the sound and established case law noted above.

There is also no merit to the related suggestion by amicus curiae (the insurers' California Workers' Compensation Institute) that our Supreme Court, in *Charles J. Vacanti, M.D., Inc. v. State Comp. Ins. Fund* (2001) 24 Cal.4th 800 [102 Cal.Rptr.2d 562, 14 P.3d 234] (hereinafter *Vacanti*) has already purportedly limited insurer tort liability to exceptional circumstances where intentional acts violate a fundamental policy of the state. In *Vacanti,* a group of medical providers sued a group of workers' compensation insurers, alleging the insurers conspired to put them out of business by intentionally mishandling their lien claims before the Workers' Compensation Appeals Board, and seeking recovery for damages to their businesses.

The court in *Vacanti* held that the exclusive remedy provisions of the Workers' Compensation Act, where the alleged injury is collateral to or derivative of a compensable injury, barred plaintiffs' damage claims based on mishandling of their lien claims and barred their causes of action for abuse of process and fraud. However, the *Vacanti* court permitted other causes of action; i.e., those seeking damages for Cartwright Act violations and RICO (Racketeer Influenced and Corrupt Organizations Act) violations, as well as tortuous interference with contractual and prospective economic relations, and violations of unlawful competition laws. (*Vacanti, supra,* 24 Cal.4th at pp. 812, 820.) And the court reiterated the long-standing rule that if an injury falls within the scope of the exclusive remedy provisions, it can only be taken outside the workers' compensation claims context and treated as an ordinary civil matter in " 'some exceptional circumstances,' " such as

where offending conduct is not a part of the normal employment relationship or the compensation claims process, or where the motive behind the misconduct violates a " 'fundamental policy of this state.' " (*Id.* at pp. 812, 820-823.)

In contrast to the situation in *Vacanti*, the present case has absolutely nothing to do with the doctrine of the general exclusivity of remedies within the workers' compensation claims system for injuries collateral to or derivative of a worker's compensable injury. The exclusivity doctrine applies to actions by an employee or by one whose rights are derivative from an employee's rights. The present case is an ordinary civil action between an insured and its direct insurer. Amicus curiae's reliance on *Vacanti* is thus misplaced.[6]

III. *The award of punitive damages*\*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

*Lance Camper's cross-appeal*\*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

DISPOSITION

The trial court's award of costs to Lance Camper is modified to include court reporter fees ($4,483.60). In all other respects, the judgment is affirmed. Lance Camper is entitled to costs on appeal.

Nott, J., and Cooper, J., concurred.

A petition for a rehearing was denied August 22, 2001, and the petition of appellant Republic Indemnity Company of America for review by the Supreme Court was denied November 20, 2001.

---

[6]To the extent other contentions raised by amicus curiae were not raised in Republic's opening brief, we decline to address such contentions. "Amicus Curiae must accept the issues made and propositions urged by the appealing parties, and any additional questions presented in a brief filed by an amicus curiae will not be considered." (*Eggert v. Pacific States S. & L. Co.* (1943) 57 Cal.App.2d 239, 251 [136 P.2d 822]; see *Knetsch v. United States* (1960) 364 U.S. 361, 370 [81 S.Ct. 132, 137, 5 L.Ed.2d 128].) Otherwise, amicus curiae, rather than the parties themselves, would control the issues litigated. It would also be inappropriate for amicus curiae unilaterally to augment the scope and thus the cost of litigation to the opposing party.

\*See footnote, *ante*, page 1151.