[No. B073716. Second Dist., Div. One. Nov. 21, 1994.]

TRICOR CALIFORNIA, INC., et al., Plaintiffs and Appellants, v. STATE COMPENSATION INSURANCE FUND, Defendant and Respondent.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part VI.

## COUNSEL

Roxborough & Associates, Nicholas P. Roxborough and Esteban G. Gallegos for Plaintiffs and Appellants.

Sheppard, Mullin, Richter & Hampton, Pierce T. Selwood, Andre J. Cronthall, William J. Arzbaecher III, Candace L. Matson, Richard A. Krimen, Charles W. Savage and Barbara Gallios-Lee for Defendant and Respondent.

## OPINION

**ORTEGA, J.**—Plaintiffs Tricor California, Inc., Tricor America, Inc., and Tricor International (collectively, Tricor) appeal from the judgment dismissing their case against their workers' compensation insurer, defendant State Compensation Insurance Fund (SCIF.) Tricor alleged SCIF engaged in bad faith claims handling resulting in Tricor's paying unjustified higher premiums and wrongly being denied dividends. We agree with Tricor's contentions that the trial court erred in dismissing its complaint. We hold that Tricor properly could present evidence of negligent claims handling as evidence of bad faith and breach of contract by SCIF; that SCIF is not immune from punitive damages awards; and that Tricor did not fail to exhaust administrative remedies. We reverse the judgment.

### FACTS AND PROCEDURAL HISTORY

Tricor bought three consecutive one-year workers' compensation insurance policies, covering the period from October 30 to the following October

29 for, respectively, 1985, 1986, and 1987, from SCIF. Tricor's second amended complaint alleged that SCIF "was created in 1914 by the California Legislature as a public enterprise fund to write workers' compensation insurance as a self-supporting insurance carrier competing with private insurers. As such, it is subject to the jurisdiction and control of the Insurance Commissioner of California. [SCIF] issues policies to more than 250,000 California employers and owns or controls assets exceeding $2.5 Billion. It is California's largest workers' compensation carrier, and holds itself out to the public as the 'most experienced carrier in California.' Although prohibited by Insurance Code, Section 11775, from becoming 'more . . . than self-supporting,' [SCIF] enjoyed a net investment gain on investment income of over $370 Million for the year ending December 31, 1989. Premiums earned for that year exceed $1.8 Billion. [Tricor is] informed and believe[s] and on such basis believe[s] that [SCIF] is acting as a 'for-profit' insurance carrier."

Tricor alleged it "sought information and advice concerning insurance matters from [SCIF, which] represented [itself] to be expert[] and held [itself] out as having superior training, education and knowledge in the insurance industry. . . . [Tricor] relied on [SCIF] to furnish information concerning the procurement of insurance and the extent of coverage, to handle claims, to monitor files and reserves, and to hire competent medical defense doctors and defense counsel."

The complaint alleged the following factors were express or implied contract terms which SCIF's agents also orally promised during negotiations to perform, but which they intentionally, in bad faith, and/or negligently did not perform: "(a) adequately, and reasonably evaluate in good faith all claims prior to setting reserves; (b) periodically and consistently monitor the reserves so that the reserves accurately reflect the amount of money paid out and the amount of money that would be paid out for future expenses; (c) adequately and on a timely basis adjust the reserves to reflect the realistic value of each claim; (d) minimize the number of litigated claims; (e) provide safety instruction on a periodic basis to [Tricor]; (f) hire competent medical defense doctors; (g) refer each claim to competent and adequate legal counsel for purposes of providing [Tricor] with competent legal counsel; (h) monitor all claims files; (i) regularly communicate with said legal counsel; (j) discuss with [Tricor] the status of cases; (k) conduct investigations when necessary; (l) provide [Tricor] with timely credits on subrogation recoveries; (m) provide [Tricor] with timely notice of dividends for each policy year; (n) pay yearly dividends and/or premium refunds to [Tricor] when earned; (o) have [SCIF's] claims examiners keep regular diaries for properly monitoring

claims; (p) avoid unnecessary delays in closing claims; (q) make timely payment to [Tricor's] injured employees; (r) limit the number of angry claimants by working with them; (s) handle the claim files consistent with [Tricor's] Unit Stat deadlines, and (t) work closely with [Tricor's] personnel in coordinating claims and reducing claims in the future." The complaint also alleged Tricor repeatedly sought to review and audit its covered employee claimant files to ensure satisfaction of the alleged factors, but SCIF deliberately and in bad faith refused to permit such review.

Tricor alleged SCIF intentionally engaged in this conduct so it "would receive higher premiums from [Tricor] and/or pa[y Tricor] less in dividends," and "to increase [SCIF]'s revenues and/or surplus, while at the same time impairing the financial interests of [Tricor], then, now and in the future." Tricor alleged SCIF was "acting in a manner totally contrary to the financial interest of its insureds, . . . [Tricor]." Tricor alleged SCIF engaged in this conduct "intentionally and knowingly . . . to avoid having to pay [Tricor] reasonable dividends and . . . to charge [Tricor] unreasonably higher insurance premiums, return a lesser dividend and retain corporate reserves in a sum greater than justified or necessary by an Insurance Company such as SCIF." Alternatively, Tricor alleged SCIF's conduct negligently breached its duty of care toward Tricor.

Tricor also alleged SCIF "refus[ed] to acknowledge or deal with [Tricor's] duly appointed agents (which consist of third party risk managers and/or attorneys)," thus preventing Tricor "from monitoring the claims brought against it. . . . determining whether [SCIR is] performing [its] contractual and fiduciary obligations owed to [Tricor]. . . . determining whether [Tricor's] rights are properly and adequately being protected and pursued by [SCIF]. . . . containing [Tricor's] costs and expenses of Workers' Compensation Insurance; and . . . receiving the benefit of its contractual relationships with third party risk managers, attorneys and others whose knowledge and experience in workers' compensation matters could enable [Tricor] to realize a substantial savings in premium dollars." Tricor alleged SCIF engaged in such conduct, not, as SCIF claimed, "to protect privacy rights of the injured worker, but to: destroy what [SCIF] view[s] as a 'noise making cottage industry,' (referring to third party risk managers); to discriminate; to discourage and prevent competition; to compete unfairly with other private insurers; to perpetrate a fraud upon [Tricor] and other [of SCIF's] insureds; to inhibit or prevent discovery of [SCIF's] fraudulent and negligent conduct, thereby enabling it to remain the largest underwriter of workers' compensation insurance in the State of California; to cause confusion among [SCIF's] insureds; to gain an unfair advantage over [Tricor] and other insureds of

[SCIF]; and to enable it to collect ex[]orbitant premium payments from [Tricor] and other insureds of [SCIF]," all of which constituted unfair business practices.

The complaint alleged negligence, fraud, unfair business practices, and breaches of the implied covenant of good faith and fair dealing, fiduciary duty, and contract. Tricor sought an accounting, an injunction prohibiting SCIF from repeating the challenged conduct, restitution, and compensatory and punitive damages.

The trial court sustained SCIF's demurrer to the unfair business practices cause of action without leave to amend. Tricor does not challenge that ruling. The trial court granted SCIF's summary adjudication of issues motion regarding the causes of action for breaches of contract and fiduciary duty, and the punitive damages claim, because SCIF is immune from tort liability and punitive damages, and claims mishandling cannot constitute a contract breach. The trial court denied the motion regarding the remaining causes of action and remedies. Later, before trial, the trial court granted SCIF's *in limine* motion (Evid. Code, § 402), to exclude Tricor's evidence regarding how SCIF's adjusters handled individual claims to show bad faith through failure to adhere to industry standards, because such acts were discretionary. The trial court permitted Tricor to present evidence of SCIF's fraudulent conduct or bad faith in the general manner in which it adjusted policy claims. Conceding the excluded evidence constituted its entire case, Tricor dismissed the complaint without prejudice so it could seek appellate review.

### ISSUES

Tricor argues the trial court erred in partially granting SCIF's summary adjudication of issues motion and granting SCIF's motion to exclude evidence of the manner in which it processed Tricor's employees claims. Specifically, Tricor contends: (I) in the context of its allegations, SCIF's claims handling practices are not purely discretionary acts for which it has immunity from suit; (II) the stricken evidence was admissible to show breaches of the implied covenant of good faith and fair dealing, fraud, and breach of contract; (III) the complained of conduct breached express or implied contract terms, and thus the breach of contract cause of action was improperly dismissed; and (IV) SCIF properly is subject to punitive damages.

In addition to disputing Tricor's contentions, SCIF contends (V) Tricor failed to exhaust available administrative remedies available through

the Workers' Compensation Insurance Rating Bureau and the Insurance Commissioner.

DISCUSSION

I and II

We discuss these issues together because they are interrelated. SCIF does not challenge the trial court's ruling that the kind of insurer bad faith in adjusting claims alleged by Tricor is actionable. ■ Essentially, SCIF argues that evidence of merely negligent claims handling is irrelevant to show bad faith resulting in an unjustified increase in its reserves and in Tricor's premiums, and an unjustified decrease in Tricor's dividends. Because, goes the argument, merely negligent claims handling itself is not actionable, as a discretionary act for which SCIF has statutory and common law immunity, evidence of negligent claims handling is irrelevant and thus inadmissible as evidence to prove something else, i.e., that the negligent claims handling was part of an unjustified intentional or negligent inflation of SCIF's reserves and Tricor's premiums, and reduction or elimination of dividends Tricor otherwise would have received. We disagree.

Assuming, without deciding, that SCIF correctly argues that merely negligent claims handling alone is not actionable, that is neither Tricor's claim nor its reason for proffering the evidence. Three recent cases strongly support Tricor. In *Courtesy Ambulance Service* v. *Superior Court* (1992) 8 Cal.App.4th 1504 [11 Cal.Rptr.2d 161], the court held that neither the Government Tort Claims Act nor the Insurance Code barred tort claims, including punitive damages, in a case alleging similar conduct under similar causes of action. (*Id.* at pp. 1509, 1511-1519.) *Maxon Industries, Inc.* v. *State Compensation Ins. Fund* (1993) 16 Cal.App.4th 1387, 1390-1394 [20 Cal.Rptr.2d 730], while not reaching the punitive damages issue (*id.* at p. 1391, fn. 1), agreed. Finally, *Security Officers Service, Inc.* v. *State Compensation Ins. Fund* (1993) 17 Cal.App.4th 887, 889-890, 892-900 [21 Cal.Rptr.2d 653], held that, if proved, essentially identical conduct as alleged here breached tort and contractual implied covenants of good faith and fair dealing.

SCIF attempts to escape these cases by correctly arguing they did not address the type of evidence which might prove such conduct, and by arguing that permitting such evidence would undermine the workers' compensation system's role as the sole forum and arbiter of workers' compensation claims, and involve exhaustive relitigation of such claims in trial court lawsuits.

However, the individual claims results would not be relitigated. The injured worker would not have his award altered. Thus, introducing such evidence in the trial court would not affect the validity of the award.

Second, given that Tricor's allegations are actionable, evidence of negligent mishandling of such claims to Tricor's detriment, if shown as a pattern, clearly would be strong circumstantial evidence that SCIF indeed engaged in the complained of conduct. SCIF argues that only evidence of a company wide, general policy, i.e., evidence that it adopted such a policy as a matter of course, is admissible. We presume SCIF is referring to direct evidence of such conduct, i.e., a writing, or witness testimony. However, circumstantial evidence is equally probative to prove the challenged conduct.

We hasten to add that evidence of proper claims handling would be admissible and highly helpful to SCIF in refuting such charges, even in the face of testimony or writings supporting them. Obviously, if individual claims were properly handled, it would rebut a charge of bad faith. Moreover, a fact finder would have to agree not only that individual claims were mishandled, but that such conduct was evidence of bad faith, when combined with other evidence.

Thus, the trial court erred in precluding Tricor from presenting such evidence.

### III

Tricor's insurance policies with SCIF stated SCIF would pay claims when due, and contained integration clauses. The parties agree that the duties Tricor alleged SCIF failed to perform, i.e., to adequately and promptly investigate claims, pay only legitimate claims in proper amounts, permit Tricor to review and audit files, accurately and fairly set Tricor's premium and dividend rates based on the true claims, etc., are not expressly set out in the policies. The trial court agreed with SCIF that the policies were fully integrated, parole evidence was inadmissible to change or modify the terms, and the duties alleged by Tricor were not contract requirements. Tricor argues, however, that such terms are implied contractual conditions which may be enforced under the breach of contract and contractual implied covenant of good faith causes of action. We agree with Tricor.

First, Tricor alleged SCIF orally promised to accept all such duties, and presented evidence from SCIF employees that they promise whatever is necessary to sell the policy, and never reduce such oral promises to writing because doing so is too cumbersome. Second, we think it impossible for

SCIF to pay valid claims when due, as expressly required under the contract, without engaging in most or all of the conduct Tricor says SCIF promised to do.

Finally, and contrary to SCIF's contention, we think *Security Officers Service, Inc.* v. *State Compensation Ins. Fund, supra,* 17 Cal.App.4th 887, addresses and rejects a comparable argument on essentially identical facts. We quote from the case at length: "The theory of plaintiff's principal, contract claims is that SCIF breached either the express terms of the policy, or its implied covenant of good faith and fair dealing, or both, by an interwoven pattern of failing to pay claims promptly, defend them diligently, or assign them reasonable reserves, followed by improperly failing to pay plaintiff dividends. SCIF's position is that the complaint on its face shows no such breach of either express or implied contractual duties, because SCIF's alleged practices are consonant with the policy's allocation of responsibility and discretion. . . . [¶] The policy specifically requires SCIF to 'pay promptly when due to those eligible under this policy the benefits required of [plaintiff] by the workers' compensation law.' SCIF contends this language prescribes only a duty to disburse payments that have become due (presumably by and after adjudication or settlement), and therefore plaintiff's allegations of slow and expensive claims resolution do not describe a breach of the obligation. That may or may not be true. Another facially permissible construction of the 'prompt payment' obligation is that it accrues when a sufficiently definite case of workers' compensation liability is made out. Under that interpretation, plaintiff's allegations of delay in resolving claims may signify violations. . . . [¶] The allegedly slow and expensive claims resolution also occurred as part of SCIF's defending, investigating, and settling claims, which the policy grants SCIF 'the right' and, as to defense, the 'duty' to do. Because the policy language granting and imposing these rights and duty says no more about how they are to be carried out, SCIF correctly argues that its challenged practices do not violate that language. But this does not end the inquiry. SCIF's contention that 'the [p]olicy does not require [it] to handle claims "properly" or "expediently" or in any other manner' must also be tested against the policy's implied covenant of good faith and fair dealing." (*Id.* at pp. 893-894.)

In a lengthy and well-reasoned discussion spanning several pages, the court concluded that "the implied covenant of good faith and fair dealing imposes limits on the insurer's latitude in discharging its contractual right or duty to defend, investigate and settle claims." (*Security Officers Service, Inc.* v. *State Compensation Ins. Fund, supra,* 17 Cal.App.4th at p. 895.) "Under the policy, plaintiff did not agree to pay such premiums as SCIF might

discretionarily charge. Rather, plaintiff agreed to pay premuims fixed by law and regulations. . . . The complaint alleges that this regulated [rate setting] system computes premiums based in part on the policyholder's experience modification, derived from the quantity of outstanding claims and the reserves therefor, which plaintiff alleges SCIF has intentionally and unreasonably failed to minimize or reduce. Thus, plaintiff is bound to pay SCIF—or, allegedly, any successive insurer—a policy premium that SCIF's claims and reserves handling will directly influence. Because the powers so confided in SCIF's discretion will impact the degree of plaintiff's primary burden under the policy, it appears logical that the covenant of good faith and fair dealing indeed requires SCIF to conduct its claims resolution and reserve allocation processes with good faith regard for plaintiff's interests." (*Id.* at p. 896.)

"SCIF asserts that to measure its practices under a good faith standard would improperly conflict with the workers' compensation rights of claimants, to whom SCIF is directly liable, but who are limited to compensation remedies for insurers' delay [citation], because SCIF would be forced to attune its efforts toward minimizing plaintiff's premiums, as opposed to proper claims determination and payment. The conflict is a false one. A good faith standard does not pit plaintiff's interests against its claimants'. From the standpoint of diligence and proper reserve-setting, the interests of both are identical. Indeed, competent performance at reasonable cost is the combined goal and standard for all professions and businesses, including insurance. [¶] We therefore conclude, in light of all of the authorities heretofore discussed, that the policy's implied covenant of good faith and fair dealing required SCIF to conduct its functions of defending, investigating, reserving, and settling claims with good faith regard for their effect upon plaintiff's premiums, as determined under the policy and governing regulations. [¶] Moreover, a similar conclusion holds true regarding plaintiff's contingent entitlement to dividends under the policy. Although SCIF's allegedly deficient performance does not violate the express terms of the policy concerning dividends, it does potentially qualify as a breach of the obligation of good faith and fair dealing with respect to that policy benefit. . . . Whether or not plaintiff will be able to prove that it lost a dividend because of the practices challenged, its claims fall within the scope of the implied covenant's protection of contractual interests and benefits. [Citation.]" (*Security Officers Service, Inc.* v. *State Compensation Ins. Fund, supra,* 17 Cal.App.4th at p. 898.)

We agree with this thorough analysis and conclude the trial court erred in dismissing the contractual causes of action.

## IV

■ Conceding that *Courtesy Ambulance Service* v. *Superior Court, supra*, 8 Cal.App.4th 1504 held SCIF could be sued for punitive damages on allegations and causes of action essentially identical to those before us, SCIF urges us to reject that case as poorly reasoned. SCIF repeats arguments rejected by that court that it is a quasi-governmental agency which is an integral part of the workers' compensation system, and that public policy would not be served by permitting punitive damages awards against such an entity.

We reject SCIF's arguments. Because we think those arguments were exhaustively analyzed by *Courtesy Ambulance Service* v. *Superior Court, supra*, 8 Cal.App.4th 1504, we quote it at length. First, the court analyzed SCIF's existence as a quasi-governmental entity, and concluded that neither the Insurance or Government Code barred punitive damages against SCIF for the type of conduct complained of here. (*Id.* at pp. 1511-1515.) The court went on to reject SCIF's argument that the 1979 Insurance Code amendment left intact its punitive damages immunity. (*Id.* at pp. 1516-1517.) The court concluded that public policy supports rather than defeats the propriety of punitive damage awards against SCIF in this context: "[M]ost jurisdictions do not permit an award of punitive damages against public entities without specific statutory authority. In California, of course, this reluctant approach is codified in the statute expressly forbidding such damages. We do not quarrel with the court's discussion [in an earlier case] of the policy reasons in favor of such a rule: the unfairness of placing the financial burden on innocent taxpayers, the difficulty of assessing such damages against a municipality with broad taxing powers, and the limited deterrent effect. However, as applied to this case, these arguments miss the mark. SCIF, as noted, operates on a self-sufficient basis and it concedes that the burden would be borne not by the taxpayers, but by its customer-employers, who would be free to seek coverage elsewhere if SCIF chose to recoup its losses by raising rates rather than through other economies. SCIF's financial position is not dependent upon the taxing power and there is little likelihood of a reckless award against it. (We note that a plaintiff seeking punitive damages must present evidence of the defendant's wealth or financial condition, to ensure that any award is rationally based. [Citation.] Finally, insofar as SCIF is run as a private business, the threat of punitive awards will carry its traditional effect of encouraging management to supervise and discipline errant employees. [¶] SCIF's argument that we should not hold that [Insurance Code] section 11873 repealed Government Code section 818 by implication is without merit. . . . But the argument is inapposite: the obvious, express

intent of section 11873 *is* to repeal those sections of the Government Code not excepted, insofar as they affected SCIF. Our holding has nothing to do with repeal by implication; the repeal is explicit on the face of the statute." (*Id.* at pp. 1517-1518.)

We recognize that the court in *Maxon Industries, Inc.* v. *State Compensation Ins. Fund, supra,* 16 Cal.App.4th 1387, while agreeing with *Courtesy Ambulance* that immunities do not prevent such suits (*id.* at pp. 1390-1394), in dicta, declined to endorse *Courtesy Ambulance*'s punitive damages analysis, which was not before it. The court noted that "[t]he previous common law in California and in other states was that punitive damages could not be imposed against public entities absent a statute that clearly subjected the entity to such liability. [Citations.]" (*Maxon Industries, Inc.* v. *State Compensation Ins. Fund, supra,* 16 Cal.App.4th at p. 1391, fn. 1.) We nonetheless agree with the *Courtesy Ambulance* analysis and hold the trial court erred in finding SCIF immune from punitive damages.

V

■ Finally, we reject SCIF's jurisdictional claim, raised for the first time on appeal, that Tricor failed to exhaust its administrative remedies because its complaint essentially involves a dispute about reserve, premium, and dividend rate setting, properly subject to administrative regulation. In its reply, in addition to disputing that such tort and breach of contract actions properly are subject to administrative rate setting procedures, Tricor attaches letters from the agencies to which SCIF points, in which they decline authority over such disputes. SCIF objects to our noticing these letters, since they essentially are advisory opinions, not conclusions after a hearing.

We need not resolve the dispute over the letters, however. This is not a rate setting dispute, but rather a claim that SCIF engaged in bad faith in settling individual policy claims to artificially inflate its reserves and Tricor's premiums, and deflate Tricor's dividends. (Cf. *P.W. Stephens, Inc.* v. *State Compensation Ins. Fund* (1994) 21 Cal.App.4th 1833 [27 Cal.Rptr.2d 107] [dispute over a proposed rate surcharge properly subject to administrative review].) Thus, there was no failure to exhaust administrative remedies.

VI*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante,* page 230.

## DISPOSITION

We reverse those portions of the judgment dismissing the breach of contract, fraud, breach of the implied covenant of good faith and fair dealing, and accounting causes of action, and dismissing the punitive damages claims. We remand the matter for trial on those causes of action and of the punitive damages claim. We affirm that portion of the judgment dismissing the remaining causes of action. The parties are to bear their own costs.

Spencer, P. J., and Cowell, J.,* concurred.

Respondent's petition for review by the Supreme Court was denied February 23, 1995.

*Judge of the Los Angeles Superior Court sitting under assignment by the Chairperson of the Judicial Council.