[No. A128047. First Dist., Div. One. Mar. 25, 2011.]

EDWARD CAREY CONSTRUCTION COMPANY, Plaintiff and Appellant,
v.
STATE COMPENSATION INSURANCE FUND, Defendant and
Respondent.

COUNSEL

Law Offices of Eric M. Safire and Eric M. Safire for Plaintiff and Appellant.

Judith D. Sapper, James E. Armstrong and Jamie Katz for Defendant and Respondent.

OPINION

BANKE, J.—

## I. INTRODUCTION

Appellant Edward Carey Construction Company (CCC) appeals from a judgment of dismissal, entered after the trial court sustained the demurrer of State Compensation Insurance Fund (SCIF) without leave to amend. CCC sued SCIF for breach of contract and breach of the implied covenant of good faith and fair dealing after SCIF denied CCC had a valid workers' compensation insurance policy and CCC was forced to pursue legal action to obtain benefits under its policy. The trial court ruled CCC's breach of contract and breach of the implied covenant claims were barred by workers' compensation "exclusivity." We reverse.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On August 25, 2009, CCC filed a complaint for breach of contract and breach of the implied covenant of good faith and fair dealing. CCC alleged as follows: It is a domestic corporation, organized and existing under the laws of California. It obtained a workers' compensation insurance policy from SCIF for the period May 20, 2005, to May 20, 2006. During the policy period, its employee, Edward Carey, sustained a work-related injury. When CCC notified SCIF of the injury, SCIF asserted the policy "had been cancelled and was not in effect." Because SCIF denied the existence of a valid policy, CCC was required to pay for Carey's medical treatment not covered by Carey's health care insurance. CCC has incurred damages for employee wages and medical expenses of at least $250,000. CCC also was required to retain counsel to obtain benefits under the policy, and on October 17, 2008, through binding arbitration, was successful in obtaining a ruling that its insurance policy with SCIF was in full force and effect at the time of Carey's injury. CCC has demanded SCIF reimburse it for the attorney fees CCC incurred, but SCIF has refused to do so. SCIF also has continued to refuse to pay the full amount of benefits owed under the policy. CCC sought compensatory and punitive damages, as well as attorney fees and costs of suit.

SCIF filed a demurrer on the ground the Workers' Compensation Appeals Board (WCAB) has exclusive jurisdiction over the claims alleged in the complaint (i.e., workers' compensation "exclusivity"). "Plaintiff's alleged damages clearly arise from Mr. Carey's work-related injury, and as such worker's compensation is Plaintiff's exclusive remedy and the WCAB has exclusive jurisdiction to hear this dispute." SCIF additionally filed a request for judicial notice of an "Application for Adjudication of Claim" that included claims for coverage, indemnity, and reimbursement.

CCC argued in opposition that workers' compensation exclusivity applies to the claims of an injured employee, not first party claims by an insured employer for breach of contract and breach of the implied covenant of good faith and fair dealing. CCC noted the language of the insurance contract itself provided the insured could bring a civil action for failure to perform under the contract. CCC filed a request for judicial notice of the arbitration award confirming the existence of the disability insurance policy on the date of Carey's injury and the disputed insurance policy.

In its reply, SCIF focused on the fact Carey is the owner of CCC. "[T]his civil action is nothing more than Mr. Carey's (wearing a 'different hat') attempt to circumvent the workers' compensation system." SCIF asserted all claims were within WCAB's jurisdiction, and to the extent CCC voluntarily paid benefits to Carey, its remedy was to request a credit under Labor Code

section 4909. SCIF filed a second request for judicial notice of WCAB hearing minutes concerning a settlement as to Carey's claims to the date of the settlement, a check to Carey for retroactive temporary disability pursuant to that settlement, a declaration of readiness to proceed to expedited hearing, and a fax communication from Carey's attorney.

SCIF's demurrer was heard December 9, 2009, and on January 4, 2010, the trial court issued a written order sustaining the demurrer without leave to amend. The court ordered the case dismissed on February 24, 2010, and on March 24, 2010, CCC filed a timely appeal.

## III. Discussion

### A. Standard of Review

"The task of this court is to determine whether the complaint states a cause of action. All facts alleged in the complaint are deemed admitted, and we give the complaint a reasonable interpretation by reading it as a whole and all of its parts in their context. (*Fisher* v. *City of Berkeley* (1984) 37 Cal.3d 644, 679, fn. 31 [209 Cal.Rptr. 682, 693 P.2d 261][1]; *Moore* v. *Regents of University of California* (1990) 51 Cal.3d 120, 125 [271 Cal.Rptr. 146, 793 P.2d 479].) We are not concerned with [the] plaintiff's possible inability to prove the claims made in the complaint, the allegations of which are accepted as true and liberally construed with a view toward attaining substantial justice. (*King* v. *Central Bank* (1977) 18 Cal.3d 840, 843 [135 Cal.Rptr. 771, 558 P.2d 857]; *Parada* v. *City of Colton* (1994) 24 Cal.App.4th 356, 362 [29 Cal.Rptr.2d 309].)" (*Lance Camper Manufacturing Corp.* v. *Republic Indemnity Co.* (1996) 44 Cal.App.4th 194, 198 [51 Cal.Rptr.2d 622] (*Lance Camper*).) We also " 'are not bound by the determination of the trial court, but are required to render our independent judgment on whether a cause of action has been stated.' (*Hoffman* v. *State Farm Fire & Casualty Co.* (1993) 16 Cal.App.4th 184, 189 [19 Cal.Rptr.2d 809].)" (*Ibid.*)

### B. Sufficiency of the Complaint

 CCC contends the law is well established that an employer can sue its workers' compensation insurance carrier for breach of contract and the implied covenant of good faith and fair dealing, where the carrier has failed to provide benefits under the policy and has done so in bad faith. CCC relies on *Security Officers Service, Inc.* v. *State Compensation Ins. Fund* (1993) 17 Cal.App.4th 887 [21 Cal.Rptr.2d 653] (*Security Officers*), and its progeny,

---

[1] Abrogated on another ground as stated in *Kavanau* v. *Santa Monica Rent Control Bd.* (1997) 16 Cal.4th 761, 774–775 [66 Cal.Rptr.2d 672, 941 P.2d 851].

including *MacGregor Yacht Corp. v. State Comp. Ins. Fund* (1998) 63 Cal.App.4th 448 [74 Cal.Rptr.2d 473] (*MacGregor Yacht*).

SCIF contends these cases are inapplicable. It points out none involved a situation where the employee receiving workers' compensation benefits was a principal or owner of the insured company, as is the case here. It further points out the breach of contract and bad faith claims in these cases were based on the mishandling of numerous workers' compensation claims, and the damages sought were for losses due to unjustifiably high premiums and lost dividends.

SCIF reads *Security Officers* and its progeny too narrowly. While the particular facts of these cases are different in some respects than those alleged here, the fundamental legal principles articulated in these cases are entirely apposite. Under those principles, CCC's allegations are sufficient to state claims for breach of contract and the implied covenant of good faith and fair dealing.

In *Security Officers*, the employer alleged its workers' compensation carrier, SCIF, failed to process claims diligently and unreasonably inflated the reserves assigned to them. (*Security Officers, supra,* 17 Cal.App.4th at pp. 891–892.) This conduct adversely affected the employer's experience rating, resulting in increased premiums and decreased dividends. (*Ibid.*). The trial court sustained SCIF's demurrer without leave to amend. The Court of Appeal reversed. (*Id.* at pp. 892, 900.)

SCIF first argued it was "immune from suit in tort" under the Tort Claims Act. (*Security Officers, supra,* 17 Cal.App.4th at pp. 890, 892.) The court rejected this argument, following the reasoning in *Courtesy Ambulance Service v. Superior Court* (1992) 8 Cal.App.4th 1504 [11 Cal.Rptr.2d 161], and *Maxon Industries, Inc. v. State Compensation Ins. Fund* (1993) 16 Cal.App.4th 1387 [20 Cal.Rptr.2d 730]. (*Security Officers, supra,* at pp. 892–893.)

SCIF next argued no breach of express or implied contractual obligations had been alleged. (*Security Officers, supra,* 17 Cal.App.4th at pp. 893–894.) While the court agreed the policy language pertaining to SCIF's defense, investigation and settling of claims did not specify "how" it was to perform those tasks—i.e., the policy language did not " 'require [SCIF] to handle claims "properly" or "expediently" or in any manner' " (*id.* at p. 894)—that did not end the analysis. SCIF's conduct also had to be "tested against the policy's implied covenant of good faith and fair dealing." (*Ibid.*). The court then summarized the law on the implied covenant of good faith and fair dealing, which had become well explicated in the context of insurance

policies generally. (*Id.* at pp. 894–895.) In light of this legal backdrop, the court rejected SCIF's assertion that "so long as it defend[ed] and pa[id] claims against" its insured, the employer "received the benefits of SCIF's obligations in respect of defense and payment" and could not complain about *how* the insurer defended against and paid the claims. (*Id.* at pp. 895–896.)

The court also rejected SCIF's assertion that damages based on impacted premiums and dividends conflicted with the insured's contractual agreement to accept any rate increase approved by the Insurance Commissioner. This was not, explained the court, an agreement to accept "any" premium demanded by the insurer, but was an obligation to pay whatever premium was fixed by law and regulations. It did not embrace an obligation to pay unwarranted premiums caused by the improper handling of claims and reserves. (*Security Officers, supra,* 17 Cal.App.4th at p. 896.)

Finally, the court rejected SCIF's argument that "to measure its practices under a good faith standard would improperly conflict with the workers' compensation rights of claimants, to whom SCIF is directly liable, but who are limited to compensation remedies for insurers' delay." (*Security Officers, supra,* 17 Cal.App.4th at p. 898.) As the court explained, "[a] good faith standard does not pit [the employer's] interests against its claimants'. From the standpoint of diligence and proper reserve-setting, the interests of both are identical. Indeed, competent performance at reasonable cost is the combined goal and standard for all professions and businesses, including insurance." (*Ibid.*)

In *Tricor California, Inc. v. State Compensation Ins. Fund* (1994) 30 Cal.App.4th 230 [35 Cal.Rptr.2d 550] (*Tricor*), the insured employer similarly alleged SCIF had breached, in a multitude of ways and in bad faith, its claims handling and reserve obligations, resulting in unjustifiably higher premiums and lower dividends. The trial court granted summary adjudication in favor of SCIF. The Court of Appeal reversed. (*Id.* at pp. 233, 235–236.)

SCIF argued evidence of "negligent" claims handling was "irrelevant" to show bad faith conduct and, if allowed, "would undermine the workers' compensation system's role as the sole forum and arbiter of workers' compensation claims, and involve exhaustive relitigation of such claims in trial court lawsuits." (*Tricor, supra,* 30 Cal.App.4th at p. 237.) Not so, explained the court. "[T]he individual claims results would not be relitigated. The injured worker would not have his award altered." (*Id.* at p. 238.) Nor was such evidence irrelevant. Rather, evidence of a pattern of "negligent" claims handling could be strong circumstantial evidence of bad faith conduct. (*Ibid.*) SCIF also renewed its argument advanced in *Security Officers* that its policies imposed no constraints on how it handled claims and fixed reserves

and therefore its conduct should not be measured under a good faith standard. (*Tricor*, at pp. 239–240.) The court again rejected SCIF's argument, citing extensively to *Security Officers*. (*Tricor*, at pp. 239–240.)

In *Lance Camper*, the insured employer also alleged its workers' compensation insurer, Republic Indemnity, had breached, in bad faith, its claims handling and reserve setting obligations under the insurance policy. (*Lance Camper, supra*, 44 Cal.App.4th at p. 197.) The trial court granted judgment on the pleadings to Republic Indemnity. The Court of Appeal reversed. (*Id.* at pp. 197, 204.)

Republic Indemnity, joined by SCIF as an amicus curiae, argued the employer could not pursue breach of contract and implied covenant claims without first exhausting "administrative remedies" through the Department of Insurance. The court rejected this assertion: "The Commissioner's supervisory and regulatory power over the insurance industry does not give him power to adjudicate all insurance disputes—such as this one, which involves an alleged breach of contract with a demand for money damages . . . ." (*Lance Camper, supra*, 44 Cal.App.4th at p. 199.) The court observed "[t]he insurer and its supporters cite many statutes." (*Id.* at p. 200.) None, however, supported an exhaustion requirement. (*Ibid.*) The court again explained that workers' compensation insurers, like other insurers, are bound by the implied covenant of good faith and fair dealing, and in the workers' compensation context, this includes obligating "an insurer 'to conduct its functions of defending, investigating, reserving, and settling claims with good faith regard for their effect upon [the insured's] premiums . . . .' " (*Id.* at p. 202, quoting *Security Officers, supra*, 17 Cal.App.4th at p. 898.)

In *MacGregor Yacht*, the insured employer obtained a $300,000 judgment against SCIF for breach of contract and breach of the implied covenant based on SCIF's failure to adequately investigate workers' compensation claims and to deny some claims within the statutory 60-day period, and refusal to permit the employer access to records to conduct an audit. (*MacGregor Yacht, supra*, 63 Cal.App.4th at p. 452.) The Court of Appeal affirmed. (*Id.* at p. 461.)

SCIF once again asserted "its failure to investigate, defend or settle claims properly cannot as a matter of law support a theory of liability based on breach of an express contractual duty." (*MacGregor Yacht, supra*, 63 Cal.App.4th at p. 455.) The court once again explained that "contrary to SCIF's incorrect assumption, its contractual obligations do not merely begin and end with a defense of any sort followed by payment of claims, regardless of the adequacy and promptness of its investigation of claims." (*Ibid.*) Further, the employer "not only challenged in its cause of action for breach of implied covenant the *manner* in which SCIF mishandled claims, but also by

its cause of action for breach of express contract challenged SCIF's *failure to perform*." (*Id.* at p. 456.) The court also rejected SCIF's assertion that it had not breached the implied covenant of good faith and fair dealing, concluding substantial evidence supported the judgment. (*Id.* at pp. 456–459.)

■ These cases establish several salient points. First, the insured employer has different and distinct rights against its workers' compensation carrier, than does an employee claimant. (See *Tricor, supra*, 30 Cal.App.4th at pp. 237–238; *Security Officers, supra*, 17 Cal.App.4th at p. 898.) Second, as one of the two parties to the insurance contract, the employer can sue for breach of contract if the insurer fails to perform. (See *MacGregor Yacht, supra*, 63 Cal.App.4th at p. 456.) If such failure is done in bad faith, the insured employer also can sue, under general insurance "bad faith" principles, for tortious breach of the implied covenant of good faith and fair dealing. (See *Tricor, supra*, at pp. 239–240; *Security Officers, supra*, at pp. 894–896.) Third, the damages recoverable by an insured employer for breach of a workers' compensation insurance contract, and if applicable, for tortious breach of the implied covenant of good faith and fair dealing, need not implicate or interfere with the administrative workers' compensation claims process that exclusively applies and controls as to employee claimants. (See *Tricor*, at pp. 237–238; *Security Officers*, at p. 898.)

The more recent case of *Tilbury Constructors, Inc. v. State Comp. Ins. Fund* (2006) 137 Cal.App.4th 466 [40 Cal.Rptr.3d 392] (*Tilbury Constructors*), reinforces these points. The issue in *Tilbury Constructors* was whether the insured employer could sue SCIF for its handling of a subrogation claim. SCIF had paid nearly $220,000 in workers' compensation benefits to the injured employee and estimated future benefits would exceed $280,000. (*Id.* at p. 472.) Just prior to trial in the injured employee's lawsuit against an allegedly negligent third party, SCIF "sold" its subrogation rights to the employee for $10,000. (*Ibid.*) As a result, there was virtually no recoupment of the workers' compensation amounts paid to the injured employee, which adversely affected the employer's premiums. (*Id.* at pp. 472–473.) The employer sued for breach of the insurance contract and tortious breach of the implied covenant of good faith and fair dealing. (*Id.* at p. 470.)

Following *New Plumbing Contractors, Inc. v. Nationwide Mutual Ins. Co.* (1992) 7 Cal.App.4th 1088 [9 Cal.Rptr.2d 469] (*New Plumbing*), the *Tilbury Constructors* court held a breach of contract claim cannot be based on a dispute over how a workers' compensation carrier exercises its subrogation right. (*Tilbury Constructors, supra*, 137 Cal.App.4th at pp. 476–477.) The court explained not only is this a right that belongs to the *insurer* (and is not a duty or obligation owed to the insured), but also is a right as to which the insurer, by statute, has multiple options, including taking *no* action. (*Id.* at

p. 476.) Further, a carrier's " 'decision regarding pursuing its subrogation rights *after* it has properly paid claims under the insurance policy does not affect the insured's receiving the *benefits of the insurance agreement.*' " (*Id.* at pp. 476–477, italics added, quoting *New Plumbing, supra,* at p. 1096.) Accordingly, a complaint about an insurer's exercise of its subrogation rights stands in contrast to a complaint based on allegations of "defalcations in the manner in which [the insurer] handled the claim, paid out the benefits, or dealt with the claims handling portion of the case." (*Tilbury Constructors, supra,* at p. 477.)

The court also enumerated four points of comparison with *Jonathan Neil & Assoc., Inc. v. Jones* (2004) 33 Cal.4th 917 [16 Cal.Rptr.3d 849, 94 P.3d 1055] (*Jonathan Neil*), in which the Supreme Court declined to extend tort remedies for breach of the implied covenant of good faith and fair dealing to claims that an insurance company had retroactively and in bad faith billed its insured for increased premiums.[2] (*Tilbury Constructors, supra,* 137 Cal.App.4th at pp. 477–479.) "First, and most importantly, State Fund ha[d] not denied Tilbury any benefits due to Tilbury under the insurance policy. None of its actions arise out of its conduct in fulfilling its obligations of defending, investigating, reserving, and settling claims." (*Id.* at p. 478.) "Second, State Fund's alleged failures did not require Tilbury to sue to enforce its rights to benefits under the policy." (*Ibid.*) Third, to the extent Tilbury was dissatisfied with State Fund's handling of subrogation rights, it could "go out into the market and purchase workers' compensation insurance" for future years from another carrier. (*Id.* at p. 479.) Fourth, State Funds' and Tilbury's interests "are not at odds in the context of subrogation." Both generally "desire to recover as much as possible." (*Ibid.*)

Finally, the *Tilbury* court distinguished *Security Officers* and its progeny as involving breach of contract and implied covenant claims based on conduct

---

[2] In *Jonathan Neil*, a trucking company which had automobile coverage under the California Automobile Assigned Risk Plan disputed premiums charged and, in a collection action by the insurer's assignee, asserted cross-claims against the insurer for tortious breach of the implied covenant of good faith and fair dealing. (*Jonathan Neil, supra,* 33 Cal.4th at pp. 923, 927–929.) The Supreme Court affirmed a reversal of the jury verdict in favor of the company on administrative exhaustion grounds as to the collection claim (*id.* at pp. 936–937) and on grounds no tort action would lie as to the cross-claim (*id.* at pp. 937–941). The court distinguished *Security Officers* and its progeny as involving conduct "inextricably linked to the mishandling of claims—precisely the kind of bad faith behavior that goes to the heart of the special insurance relationship and gives rise to tort remedies." (*Jonathan Neil,* at p. 940.) The asserted overbilling in *Jonathan Neil* was "separate from any allegations of claims mishandling." (*Ibid.*) Moreover, the insured in *Jonathan Neil* was not required "to prosecute the insurer in order to vindicate its contractual rights under the insurance policy." (*Id.* at pp. 940–941.) Here, in contrast, CCC's breach of contract and implied covenant claims *are* based on SCIF's alleged refusal to defend against and settle a claim. And CCC allegedly *was* required to pursue legal action to vindicate its rights under the policy.

arising "out of claims handling practices" and not involving "the carrier's right of subrogation." (*Tilbury Constructors, supra,* 137 Cal.App.4th at p. 479.) The court rejected the argument that the cases were applicable because the damages sought, like the damages claimed by Tilbury, were based on premium increases. The court explained the breach of contract and implied covenant claims in *Security Officers* and its progeny did not arise by virtue of the particular damages that ensued. "Rather, it is the underlying conduct that arises out of the insurance company's duties to defend, investigate, reserve, and settle claims that gives rise to the tort." (*Tilbury Constructors,* at p. 480.) Likewise, the contract claims were based on alleged failure by the insurers to perform "the primary duties . . . under the policy." (*Ibid.*) "In each of the cases . . . the insured employer's claim of breach of contract related to how the insurance company handled claims asserted against its insured." (*Ibid.*) State Fund also had the "core duties of the insurance company" and thus was obligated to defend Tilbury and promptly pay any benefits owed to the claimant. Tilbury's complaint, however, did "not allege any improprieties in these actions." (*Id.* at p. 481.)

*Tilbury Constructors* thus confirms CCC has alleged breaches of "core duties" owed it by SCIF. CCC alleges SCIF denied benefits due CCC under the insurance policy. (Cf. *Tilbury Constructors, supra,* 137 Cal.App.4th at pp. 478–480.) CCC further alleges SCIF's denial required CCC to initiate legal action against SCIF to enforce its rights to benefits under the policy. (Cf. *id.* at p. 478.)

None of these cases, moreover, remotely suggests an employer's legal rights in connection with its workers' compensation insurance policy depend on the company's size, and that a "small" company's separate, legal existence ceases for such purposes if the injured employee happens to be a principal or owner. While SCIF insists CCC and Edward Carey should be viewed as one and the same, it cites no authority that supports ignoring CCC's separate existence as a lawful business entity duly incorporated under the laws of the State of California.

SCIF's reliance on *Charles J. Vacanti, M.D., Inc. v. State Comp. Ins. Fund* (2001) 24 Cal.4th 800 [102 Cal.Rptr.2d 562, 14 P.3d 234] (*Vacanti*), is misplaced. In *Vacanti,* medical groups and management companies that provided services to workers' compensation claimants sued a group of workers' compensation insurers, alleging the insurers conspired to put the providers out of business by intentionally mishandling their medical lien claims before the WCAB. (*Id.* at pp. 807–808.) The trial court dismissed the case on the ground of workers' compensation "exclusivity." The Supreme Court affirmed, in part, and reversed, in part. (*Id.* at pp. 809–810, 829.)

The court undertook an exhaustive discussion of the workers' compensation "bargain," which provides for compensation of work-related injuries without any determination of fault in exchange for limiting employer liability to that determined by the administrative workers' compensation system, and which is also the underpinning of the workers' compensation "exclusivity" doctrine. (*Vacanti, supra*, 24 Cal.4th at pp. 810–824.) This "bargain" protects not only employers from suit by employee claimants, but also workers' compensation insurers who, within the workers' compensation administrative process, are viewed as "alter egos" of employers. (*Id.* at p. 813.)

The court pointed out claims by employees that benefits have been delayed, or wrongfully denied or terminated, fall within the scope of the exclusive remedy provisions. (*Vacanti, supra*, 24 Cal.4th at p. 815.) "[E]very employee who suffers a workplace injury must go through the claims process in order to recover compensation," and damages for delay or discontinuance of benefits are therefore "tethered to" the employee's compensable injury. (*Ibid.*) The workers' compensation statutes also provide for a 10 percent increase in the employee's benefits where the payment of compensation has been " 'unreasonably delayed or refused.' " (*Id.* at p. 818, italics omitted, quoting Lab. Code, § 5814.)

The court further observed "claims seeking compensation for services rendered to an employee in connection with his or her workers' compensation claim fall under the exclusive jurisdiction of the WCAB." (*Vacanti, supra*, 24 Cal.4th at p. 815.) This includes claims by physicians, who can file lien claims for their services directly with the WCAB, and by doing so become a "party in interest" in the administrative proceeding. (*Id.* at pp. 811, 815.) In essence, the rights of medical lien claimants "derive" from the rights of injured employees. (*Id.* at p. 816.) Such providers thus "stand in the place of the employees with respect to claims for workers' compensation benefits." (*Ibid.*) Accordingly, "[b]ecause employees are limited to WCA[B] remedies for *all* injuries caused by wrongful delays or refusals to pay [citations], [the providers] are limited to the same." (*Ibid.*) That the providers had elected to forego their lien rights and, instead, sue for other economic damages, did not change the fact their claims were predicated on the mishandling of lien claims before the WCAB. (*Ibid.*) Indeed, "[e]very time an insurer fails to timely pay a valid lien claim, the aggrieved medical provider suffers economic damages." (*Ibid.*) Workers' compensation exclusivity over provider claims is not gutted by that inevitable consequence. (*Ibid.*)

■ The court then examined whether the providers' claims came within the "narrow exception" to workers' compensation exclusivity recognized in *Unruh v. Truck Insurance Exchange* (1972) 7 Cal.3d 616 [102 Cal.Rptr. 815, 498 P.2d 1063] (*Unruh*), superseded by statute on another ground as stated in

*Hendy v. Losse* (1991) 54 Cal.3d 723, 732, footnote 6 [1 Cal.Rptr.2d 543, 819 P.2d 1].[3] "This exception focuses on the alleged acts or motives that establish the elements of the cause of action and considers whether these acts or motives constitute 'a risk reasonably encompassed within the compensation bargain.' " (*Vacanti, supra*, 24 Cal.4th at pp. 819–820, quoting *Shoemaker v. Myers* (1990) 52 Cal.3d 1, 16 [276 Cal.Rptr. 303, 801 P.2d 1054].)

The court concluded this exception did not apply to the providers' claims for abuse of process and fraud since "denying or objecting to claims for benefits is . . . a normal part of the claims process . . ." and misconduct in this regard is " 'properly addressed by the WCAB.' " (*Vacanti, supra*, 24 Cal.4th at p. 821, quoting *Marsh & McLennan, Inc. v. Superior Court* (1989) 49 Cal.3d 1, 11 [259 Cal.Rptr. 733, 774 P.2d 762].) The court cautioned, however, an employer or insurer "may not use the exclusive remedy provisions as a 'get out of jail free' card by characterizing its acts as a normal employer or insurer activity." (*Vacanti, supra*, at pp. 821–822.) Moreover, in this regard, the court stated insurers have been subject to fraud claims for denying "the existence of a workers' compensation insurance policy, because such denials are not a normal part of the claims process."[4] (*Vacanti*, at p. 822.)

The court concluded the *Unruh* exception did apply to the providers' Cartwright Act and RICO claims because they were not based solely on the handling of each provider's own lien claims. "[C]oncerted effort by insurers to interject themselves into lien claims *they did not insure* is *not* a normal part of the claims process." (*Vacanti, supra*, 24 Cal.4th at p. 825; see *id.* at pp. 825–827.) The court likewise concluded the providers' unfair competition law and tortious interference claims were not barred by workers' compensation exclusivity to the extent they were "predicated on the conspiratorial misconduct" by the insurers. (24 Cal.4th at pp. 827–828.)

---

[3] In *Unruh*, an injured employee sued her employer's workers' compensation insurance carrier under various theories for allegedly enticing her to act outside her allegedly disabled condition and assaulting her. (*Unruh, supra*, 7 Cal.3d at pp. 620–621.) The court held her negligence claim was barred by workers' compensation exclusivity (*id.* at pp. 624–629), but not her claims for assault and battery and intentional infliction of emotional distress, which were based on alleged conduct outside the insurer's normal and proper role (*id.* at pp. 629–631).

[4] In support of this point, the court cited *Jablonski v. Royal Globe Ins. Co.* (1988) 204 Cal.App.3d 379 [251 Cal.Rptr. 160] (*Jablonski*). In *Jablonski*, an injured employee sued his employer's workers' compensation insurer for fraudulently denying the existence of the policy and the destruction of evidence. (*Id.* at pp. 382–383.) Following the reasoning of *Unruh*, the court held the employee had sufficiently alleged conduct by the insurer outside its proper role as an insurer. (*Jablonski*, at pp. 390–394.)

■ In contrast to *Vacanti*, this case does not involve a claim by a medical provider who stands "in the shoes" of the employee claimant and can file a lien for professional services rendered to the claimant in the administrative proceedings. Rather, this case involves claims by the insured employer alleging its workers' compensation carrier refused to provide the benefits owed the *insured* under the policy. As *Security Officers* and its progeny make clear, such breach of contract claims do not derive from the rights of claimants, nor do they affect the administrative processing or disposition of employee claims for benefits. (See *Tricor, supra,* 30 Cal.App.4th at pp. 237–238; *Security Officers, supra,* 17 Cal.App.4th at p. 898.) Moreover, as the court noted in *Vacanti,* even where workers' compensation exclusivity might otherwise exist, courts have allowed lawsuits where "the insurer denies the existence of a workers' compensation insurance policy, because such denials are not a normal part of the claims process." (*Vacanti, supra,* 24 Cal.4th at p. 822.)

SCIF's citation to other cases holding *employee* claimants cannot sue their employer's workers' compensation insurer for alleged delay in providing or discontinuing benefits—*Everfield v. State Comp. Ins. Fund* (1981) 115 Cal.App.3d 15, 17–18 [171 Cal.Rptr. 164]; *Fremont Indemnity Co. v. Superior Court* (1982) 133 Cal.App.3d 879, 881 [184 Cal.Rptr. 184]; *Stoddard v. Western Employers Ins. Co.* (1988) 200 Cal.App.3d 165, 166–167 [245 Cal.Rptr. 820]; *Marsh & McLennan, Inc. v. Superior Court, supra,* 49 Cal.3d at pages 5–6 (employee also cannot sue employer's claims administrator)—is also unavailing. These cases are not applicable here, where the *employer* is seeking damages for its insurer's alleged refusal to provide benefits due the employer under the insurance policy.

■ In short, SCIF's assertion that "this civil action is simply Mr. Carey's attempt to circumvent the workers' compensation system by wearing a 'different hat,'" is not borne out by either the allegations of the complaint or the controlling law. CCC is not seeking here the workers' compensation benefits to which Carey is entitled. It acknowledges Carey must recover any workers' compensation benefits through the workers' compensation system. Rather, CCC is seeking to recover economic damages *it* allegedly incurred because of SCIF's failure to provide CCC the benefits to which it was entitled under the insurance policy. These alleged damages include the legal fees and costs CCC incurred in enforcing its rights under the policy (see *White v. Western Title Ins. Co.* (1985) 40 Cal.3d 870, 890 [221 Cal.Rptr. 509, 710 P.2d 309], superseded by statute on other grounds as stated in *Lee v. Fidelity National Title Ins. Co.* (2010) 188 Cal.App.4th 583, 596 [115 Cal.Rptr.3d 748]; *Brandt v. Superior Court* (1985) 37 Cal.3d 813, 819 [210 Cal.Rptr. 211, 693 P.2d 796] [bad faith damages include attorneys fees and other litigation expenses "'incurred to obtain the policy benefits'"]) and premiums it was required to pay to another insurer to obtain health care

benefits for Carey. We do not consider whether CCC can also recover damages for "medical expenses" it allegedly paid on behalf of Carey. In this respect, CCC may be in a position analogous to that of the medical groups and management companies in *Vacanti* and limited to filing a lien in the workers' compensation proceedings. We consider here only whether CCC has pled any cognizable claim, and we conclude it has done so. (See *Jablonski, supra*, 204 Cal.App.3d at p. 394.)

## IV. Disposition

The judgment of dismissal is reversed.

Marchiano, P. J., and Margulies, J., concurred.

Respondent's petition for review by the Supreme Court was denied July 13, 2011, S193531.